999 So.2d 189 (2008)
Winfred REED, Plaintiff-Appellee
v.
MID-STATES WOOD PRESERVERS, INC., Defendant-Appellant.
No. 43,799-WCA.
Court of Appeal of Louisiana, Second Circuit.
December 3, 2008.
*190 Pettiette, Armand, Dunkelman, Woodley, Byrd & Cromwell by Robert A. Dunkelman, Shreveport, for Appellant.
Alex S. Lyons, for Appellee.
Before BROWN, WILLIAMS and LOLLEY, JJ.
LOLLEY, J.
Mid States Wood Preservers, Inc. and the Louisiana Home Builders AssociationSelf Insurers Fund (collectively, "Mid States") appeal a judgment by the Office of Workers' Compensation, District 1W, State of Louisiana, partially in favor of plaintiff, Winfred Reed. Reed answers Mid States' appeal. For the following reasons, we affirm the judgment.

FACTS
This lawsuit stems from an on-the-job accident that occurred on January 10, 1998, while Winfred Reed was working for Mid States as a forklift operator. Reed injured his left knee while getting on a forklift. He remained on temporary total disability benefits, and on May 22, 2006 filed his Disputed Claim for Compensation alleging that his injuries resulted in his permanent total disability.
In October 2002, Reed became entitled to and started receiving Social Security Disability Benefits. Pursuant to federal law, Reed also became entitled to medical *191 coverage under Medicare. Mid States last paid medical expenses payable under La. R.S. 23:1203 on Reed's claim on May 10, 2003.
In early 2005 the parties engaged in settlement negotiations. Mid States claims that because Reed was Medicare eligible, the provisions of the Medicare Secondary Act, 42 U.S.C. § 1395y, necessitated that a Medicare Set-Aside Analysis ("MSA") be conducted to determine the possible amount of his future medical needs. During the settlement talks, an initial MSA was done and the results were given to Reed. As the settlement negotiations continued, a second MSA was performedagain, these results were shared with Reed. A settlement was not reached.
As stated, Reed filed his claim for compensation on May 22, 2006. Mid States admitted in its answer, filed June 12, 2006, that Reed was permanently and totally disabled and made judicial demand for the Social Security "reverse offset" provided by La. R.S. 23:1225(A). Since Reed's claim was filed more than three years after the last date Mid States paid medical benefits (May 10, 2003), it also filed a peremptory exception of prescription and/or requested declaratory relief that plaintiff's claims for medical benefits had prescribed pursuant to La. R.S. 23:1203 C. In response to Mid States' filing, Reed filed an exception of nonjoinder of an indispensable partyarguing that since Medicare had both a subrogation right and a direct cause of action to recover any conditional payments made, the United States of America, through the Centers for Medicaid and Medicaid Services ("CMS"), was an indispensable party to the litigation.
The issues were submitted to the workers' compensation judge ("WCJ") for determination at trial. First, the WCJ ruled that CMS was not an indispensable party to the litigation. The WCJ also ruled that performance of the MSAs was not a medical benefit due to Reed under the workers' compensation statute, but the transmission of the MSAs to Reed did constitute an acknowledgment sufficient to interrupt prescription of Reed's claim as of the date of the transmittal. As to the Social Security "reverse offset" issue, the WCJ ruled that Mid States was entitled to reverse the offset (that is, take the offset in the amount that had been taken by Social Security) and also that Reed was required to reimburse the overpayment resulting from the offset, but the reimbursement could be paid over Reed's remaining life expectancy. Mid States appeals the judgment of the WCJ and Reed answers the appeal.

DISCUSSION

Mid States' Appeal
Factual findings in a worker's compensation case are subject to the manifest error or clearly wrong standard of appellate review. Player v. International Paper Company, 39,254 (La.App. 2d Cir.01/28/05), 892 So.2d 781. In applying the manifest error/clearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. Stobart v. State through Dept. of Transp. and Development, 617 So.2d 880 (La.1993).

Prescription
In its first assignment of error, Mid States argues that the WCJ erred in ruling that Reed's medical benefits had not prescribed. It is undisputed that Reed last received medical benefits on May 10, 2003, and that he did not file his claim for compensation until May 22, 2006; thus, because Reed's claim was prescribed on its face, it is necessary to determine if anything occurred during the intervening time *192 that may have interrupted the running of prescription. Here, the trial court concluded that the MSAs shared by Mid States with Reed constituted an acknowledgment of his claim that served to interrupt prescription. Considering these particular facts, we agree.
Louisiana R.S. 23:1209 C provides:
All claims for medical benefits payable pursuant to R.S. 23:1203 shall be forever barred unless within one year after the accident or death the parties have agreed upon the payments to be made under this Chapter, or unless within one year after the accident a formal claim has been filed with the office as provided in this Chapter. Where such payments have been made in any case, this limitation shall not take effect until the expiration of three years from the time of making the last payment of medical benefits.
Statutes regulating prescription are strictly construed against prescription and in favor of the obligation sought to be extinguished; thus, of two possible constructions, that which favors maintaining, as opposed to barring, an action should be adopted. Mallett v. McNeal, 2005-2289 (La. 10/17/06), 939 So.2d 1254. The burden of proof on the prescription issue lies with the party asserting it unless the plaintiff's claim is barred on its face, in which case the burden shifts to the plaintiff. Id.
Prescription is interrupted when one acknowledges the right of the person against whom he had commenced to prescribe. La. C.C. art. 3464. Such an acknowledgment is not subject to any particular formality. Mallett, supra, citing Lake Providence Equip. Co. v. Tallulah Production Credit Ass'n, 257 La. 104, 241 So.2d 506, 509 (1970). The acknowledgment may be written or verbal, express or tacit. Id.
Here, Reed's claim was filed 12 days beyond the three-year prescriptive period; therefore, his claim is prescribed on its face. Accordingly, Reed has the burden of proving that his prescription of his claim was interrupted, suspended, or renounced. See Lima v. Schmidt, 595 So.2d 624, 628 (La.1992). Reed claims that prescription of his claim was interrupted by Mid South's acknowledgment of his claim, i.e., the transmitted MSA. However, citing this court's opinion in Waller v. Stuckey, 613 So.2d 643 (La.App. 2d Cir. 1993), writ denied, 618 So.2d 409 (La. 1993), Mid States argues that the MSAs, which stemmed from a settlement agreement, are not acknowledgments which served to interrupt prescription of Reed's claim. We disagree.
Mid States' statement of the law is correct, as it applies to tacit acknowledgments. But, as noted by the Mallett court, an acknowledgment of a claim may be either explicit or tacit, and we deem the MSAs transmitted to Reed, although prepared in anticipation of a settlement negotiation, an explicit acknowledgment of Reed's claim. A careful reading of Waller and the line of cases from which it evolves, particularly Lima, supra, reveals an explanation as to what may or may not be considered a tacit acknowledgment capable of interrupting prescription of a claim. That line of cases considers tacit acknowledgments and states that settlement negotiations do not evidence an acknowledgment. Here, whereas the very detailed and explicit MSAs were prepared in anticipation of a settlement negotiation, they were transferred to Reed, and clearly constituted an explicit acknowledgment of his claim. Importantly, we consider the express purpose of the MSAs was not to facilitate settlement negotiationsit was to ensure that Medicare's interest in the case was protected. Significantly, no-where *193 in the MSAs was a statement made denying liability on Mid State's part. Therefore, although Mid States correctly states where the jurisprudence stands on tacit acknowledgments, we deem the particular document in this case an explicit acknowledgment of Reed's claim and simply stop there.
Furthermore, we do not consider this opinion as a repudiation of the prior pronouncements of this court and other courts regarding tacit acknowledgments and settlement negotiations; nor do we believe our findings herein will have a chilling effect on settlement negotiations. Considering the particular facts of this case, these specific MSAs constituted an explicit acknowledgment of Reed's claim, despite the fact that in this specific case the MSAs were ultimately used in the settlement negotiation. That is not to say that other communications made in connection with a settlement negotiation would also be explicit acknowledgments. They might not. Here, however, we look to the primary purpose of these particular documents, even though they were used as part of the settlement negotiation. So considering, we conclude that the WCJ was not in error, and Reed's claim had not prescribed.

Recoupment of Overpayment
In its second assignment of error, Mid States argues that the WCJ erred in allowing Reed to repay the Social Security offset over the remainder of Reed's life expectancy. Specifically, Mid States notes that the WCJ properly determined that pursuant to La. R.S. 23:1225(A), Mid States was entitled to an offset of $197.84 per week from June 12, 2006, the date of judicial demand. However, Mid States submits that the WCJ erred in determining that the reimbursement of the overpayment could be prorated over Reed's life expectancy. We disagree.
Initially, we turn to the La. R.S. 23:1206, which provides:
Any voluntary payment or unearned wages paid by the employer or insurer either in money or otherwise, to the employee or dependent, and accepted by the employee, which were not due and payable when made, may be deducted from the payments to be made as compensation.
Notably, the statute is silent on the method of recouping the overpayment. Mid States takes the position that since there is no authority for the action taken by the WCJ, i.e., allowing Reed to reimburse the overpayment over the length of his life expectancy, that the ruling was in error. Mid States cites case law that allowed employers to suspend indemnity payments until the overpayment had been recouped. See Hebert v. Terrebonne Parish School Bd., XXXX-XXXX (La.App. 1st Cir.05/14/04), 879 So.2d 222; Breaux v. Petro Drive, Inc., 534 So.2d 48 (La.App. 3rd Cir.1988); Ferrand v. D.H.L. Co., 614 So.2d 350 (La. App. 4th Cir.1993).
However, we are not bound by those opinions and instead agree with the reasoning set forth in Crews v. Alexas Corp., 1998-885 (La.App. 5th Cir.02/10/1999), 731 So.2d 338. The Crews court noted that "the language of [La. R.S. 23:1206] is such that it reads `may be deducted' rather than `shall be deducted.' Furthermore, the statute does not refer to a suspension of benefits, but rather a deduction of payments to be made as compensation." Id. at 338. Clearly, as the statute dictates no method for reimbursement, the means by which the reimbursement should be made is left to the discretion of the WCJ. See Jackson v. Creger Automotive Co., Inc., 29,249 (La.App. 2d Cir.04/02/97), 691 So.2d 824, writ denied, XXXX-XXXX (La.09/26/97), 701 So.2d 984. In reaching its determination, the WCJ noted *194 that Reed should not be left "in financial hardship." We conclude that such a determination was in no way an abuse of discretion and was not in error.

Answer to Appeal
In his answer to appeal, Reed raises two assignments of error. First, he argues that the WCJ erred in ruling that CMS is not an indispensable party to this litigation. Although Reed submits a thorough and thought-provoking argument, we find that the WCJ was correct in its ruling.
The WCJ gave no reasons for its judgment denying Reed's exception of nonjoinder; however, in response to Reed's answer to appeal, Mid States puts forth a good, commonsense argument on the issue. Notably, in State Through Dept. Of Highways v. Lamar Advertising Co. of Louisiana, Inc., 279 So.2d 671, 677 (La.1973), the Louisiana Supreme Court held that parties should be characterized as indispensable "only when that result is absolutely necessary to protect substantial rights." We agree that just because CMS's right of reimbursement might be impacted, it is not necessarily an indispensable party to this litigation. Moreover, as pointed out by Mid States and considering the requirements of La. C.C.P. art. 641, complete relief can be granted in this case without the presence of CMS, which has not claimed an interest in the litigation. So considering, we conclude that Reed's assignment of error on this issue is without merit.
In his second assignment of error, Reed argues that the WCJ erred in computing the reverse offset granted to Mid States because she did not allow a reduction for Reed's "allowable expenses" incurred in obtaining his benefits. Specifically, Reed sought a deduction for his attorney's fees as an "allowable expense." The parties agreed that Mid States was entitled to the reverse offset allowed by La. R.S. 23:1225(A), and only disagree regarding its calculation. Considering that Reed sought the reduction for his attorney's fees, he obviously bore the burden of proving the amount. Our review of the record does not reflect that Reed sufficiently proved his claim. Based on the showing made, we conclude that the WCJ's determination was not in error.

CONCLUSION
For the foregoing reasons, the judgment of the Office of Workers' Compensation, District 1W, is affirmed. Costs of this appeal are to be paid equally by the parties.
AFFIRMED.