ROBERT M. MURPHY, Judge.
|2The Estate of Branch Ehrhardt (“plaintiff’) and William Ken Hawkins (“in-tervenor”) appeal a judgment rendered by the Office of Workers’ Compensation, District 7, partially granting a peremptory exception of prescription in favor of Jefferson Parish Fire Department (“defendant”) and dismissing all of plaintiffs claims related to the April 7, 2005 “Heart and Lung” claim. For the reasons that follow, we affirm.
FACTS AND PROCEDURAL HISTORY
Branch Ehrhardt, claimant, began working for the New Orleans Fire Department (“NOFD”) as a firefighter on October 5, 1969. Mr. Ehrhardt worked for the NOFD until December 28, 1988, when he retired due to a back injury. On May 24, 1997, Mr. Ehrhardt was hired by the Jefferson Parish Fire Department (“JPFD” or “defendant”) as a fire inspector.
On January 21, 2003, Mr. Ehrhardt sustained an on-the-job knee injury, for which, JPFD paid Mr. Ehrhardt both medical and indemnity benefits until his death | son November 11, 2008. As a result of his 2003 knee injury, Mr. Ehrhardt took a disability retirement from JPFD on April 20, 2004.
On or about July 21, 2005, Mr. Ehrhardt filed a disputed compensation claim, Form 1008, (“2005 claim”) with the Office of Workers’ Compensation (“OWC”), alleging that he was diagnosed with “heart and lung disease” on April 7, 2005.[1] In this claim, Mr. Ehrhardt alleged that his heart and lung disease was an occupational disease sustained in connection with his employment with JPFD, and sought to recover benefits, medical treatment, penalties, and attorney fees related to the alleged occupational disease. In response, JPFD, as Mr. Ehrhardt’s employer, investigated Mr. Ehrhardt’s heart and lung claim and subsequently denied the claim.
In October of 2008, the parties agreed to mediate Mr. Ehrhardt’s 2005 heart and lung claim, as well as his 2003 knee claim. On October 7, 2008, the parties reached an agreement wherein JPFD agreed to pay Mr. Ehrhardt $225,000 for past, present, and future medical expenses related to Mr. Ehrhardt’s 2003 knee claim and his 2005 *1226 heart and lung claim, in exchange for a full and final settlement, subject to the OWC’s approval of the parties’ proposed settlement. However, Mr. Ehrhardt passed away on November 11, 2008, before the settlement documents could be presented to the OWC for approval.
As Mr. Ehrhardt’s 2005 claim was still pending after his death, a subsequent telephone status conference was held with the workers’ compensation judge (“WCJ”), Judge John C. Grout, Jr., counsel for Mr. Ehrhardt, William K. Hawkins and counsel for JPFD, Michael F. Nolan. The record is unclear as to exactly what was discussed or agreed to during this status conference. Specifically, plaintiff contends that the parties agreed to allow Mr. Ehrhardt to voluntarily dismiss his 2005 claim without prejudice, but reserving Mr. Ehrhardt’s right to re-file the L claim without objection if the matter was not resolved through settlement. Defendant denies any such agreement. However, there is no dispute that following the status conference, Mr. Ehrhardt’s counsel, Mr. Hawkins, voluntarily dismissed Mr. Ehrhardt’s 2005 claim, without prejudice, on September 30, 2009, one day prior to the date on which the case was set for trial.
Thereafter, on November 6, 2009, the Estate of Mr. Ehrhardt (hereinafter “plaintiff’) filed another disputed compensation claim, Form 1008 (“2009 claim”), seeking death benefits and unpaid medical bills incurred for the treatment of Mr. Ehrhardt’s heart and lung disease.
On August 17, 2010, plaintiffs counsel, Mr. Hawkins, filed a motion to withdraw as counsel of record for plaintiff and contemporaneously filed a petition of intervention, asserting that JPFD and the Estate of Mr. Ehrhardt are indebted to him for costs and attorney’s fees associated with his representation of the Estate of Mr. Ehrhardt. On October 11, 2010, the Vour-voulias Law Firm enrolled as new counsel of record for plaintiff.
On January 20, 2011, plaintiff filed a supplemental and amended disputed compensation claim, Form 1008, (“2011 claim”) seeking, in addition to the claims raised in the 2009 claim, medical expenses arising from Mr. Ehrhardt’s knee injury, a lap band procedure, as well as death benefits and other claims for benefits and expenses due and owing at the time of Mr. Eh-rhardt’s death. In response, defendant filed peremptory exceptions of prescription and no right of action on March 2, 2011.
On April 14, 2011, a hearing on the exceptions was held, which included introduction of evidence as well as testimony by plaintiffs former attorney, Mr. Hawkins. At the conclusion of the hearing, Judge Grout partially granted and partially denied defendant’s exception of prescription. On May 13, 2011, the WCJ entered a judgment dismissing, with prejudice, “all claims for unpaid indemnity | ^benefits and unpaid medical bills related to the alleged April 7, 2005, Heart and Lung Claim, asserted in the Estate’s November 6, 2009, original 1008 and the Estate’s January 19, 2011, Supplemental and Amending 1008.”[2]
Mr. Hawkins, as intervenor, sought and was granted a devolutive appeal on May 25, 2011. Plaintiff sought a supervisory writ application with this Court, which this Court denied on July 27, 2011 with the following disposition: “Writ Denied. On the showing made, we find no reason to exercise our supervisory jurisdiction at this time. Relator has an adequate remedy on appeal.” The Estate of Branch Ehrhardt v. Jefferson Parish Fire Department, 11-676 (La.App. 5 Cir. 7/27/11) *1227 (unpublished writ disposition). Thereafter, plaintiff sought and was granted a devolutive appeal on March 19, 2012. On June 11, 2012, these two appeals were consolidated.
ISSUES ON APPEAL
On appeal, plaintiff raises four assignments of error: (1) the WCJ’s partial grant of the exception of prescription is contrary to the Louisiana Supreme Court decision in Hebert v. Cournoyer Oldsmobile-Cadillac GMC, Inc., 419 So.2d 878, 879 (La.1982); (2) the signed mediation agreement, subsequent agreement with court and counsel and other factors constitute an acknowledgment of claim sufficient to interrupt prescription; (3) the WCJ’s determination is contrary to the stated policy goals and objectives of Louisiana’s prescriptive statutes and codal articles; and (4) the Estate’s claims are timely as filed within one year of the death of the decedent and the amendment relates back to preserve the heart and lung claims.
In addition, intervenor raises the following assignment of error on appeal: (1) the WCJ erred in finding plaintiffs claim for heart and lung benefits had ^prescribed because defendant’s payment of funeral expenses interrupted the prescriptive period under La. R.S. 23:1209(C).[3]
ASSIGNMENT OF ERROR NUMBER ONE
In plaintiffs first assignment of error, it argues that the WCJ’s determination that the claim had prescribed was in contravention of the Louisiana Supreme Court case, Hebert v. Cournoyer Oldsmobile-Cadillac GMC, Inc., 419 So.2d 878, 879 (La.1982).
In Hebert, the plaintiff voluntarily dismissed a timely-filed lawsuit without prejudice through a joint motion of all parties, after the trial court granted the defendant’s motion to exclude the plaintiffs late-disclosed expert witness. Two weeks later, the plaintiff re-filed a new suit asserting the same demand after the expiration of the prescriptive period for those claims. Defendants filed an exception of prescription in response to the plaintiffs re-filed suit, which was sustained by the trial court.
On a writ of review to the Louisiana Supreme Court, the Court held that the effect on the interruption of prescription under Article 3519[4] (the predecessor article to Article 3463), did not apply to this case because the plaintiff voluntarily dismissed the suit after the defendants’ general appearance in the suit. As a result, the Court held that prescription was sufficiently interrupted and the plaintiffs subsequent suit was not prescribed.
However, the holding in Hebert was legislatively overruled by a 1999 amendment to LSA-C.C. art. 3463. Prior to the 1999 amendment, LSA-C.C. art. 3463 provided that interruption of prescription resulting from the filing of a suit is considered never to have occurred if the plaintiff abandons, voluntarily dismisses, |7or fails to prosecute the suit at the trial. The 1999 amendment added language such that the article now provides as follows:
Interruption is considered never to have occurred if the plaintiff abandons, voluntarily dismisses the action at any time either before the defendant has made any appearance of record or thereaf *1228 ter, or fails to prosecute the suit at the trial.
La. Civ.Code art. 3463 (2012) (emphasis added). Now under the current version of LSA-C.C. art. 3463, “any dismissal without prejudice, ‘either before the defendant has made an appearance of record or thereafter,’ may be considered a voluntary dismissal for purposes of Article 3463 so as to negate the interruption of prescription that otherwise occurs during the pendency of the action.” Dark v. Marshall, 41,711, p. 6 (La.App. 2 Cir. 12/13/06), 945 So.2d 246, 250 (citing La. Civ.Code art. 3463).
Plaintiff acknowledges that Hebert was legislatively overruled by the 1999 amendment to LSA-C.C. art. 3463, but nevertheless argues that Hebert is instructive and applicable to the instant case. Plaintiff points out that in Hebert, the Louisiana Supreme Court found plaintiff was lulled by defendants into reasonably believing that defendants had tacitly agreed not to raise any objections to the anticipated new suit. Plaintiff argues the facts of the instant case are similar because Mr. Eh-rhardt’s former counsel, Mr. Hawkins, believed that he would be able to re-file the claims asserted in the 2005 claim without objection after voluntarily dismissing those claims without prejudice.
However, the Louisiana Supreme Court in Hebert specifically noted that it did not decide the case on a theory of lulling or upon some other equitable basis. Hebert, 419 So.2d at 880. Rather, the court based its conclusion on the applicable statutory interpretation at that time, and held that because the voluntary dismissal occurred after defendants’ general appearance, prescription was interrupted. Id., 419 So.2d at 880. Likewise, in the instant case, an application of the current Inversion of LSA-C.C. art. 3463 instructs that Mr. Eh-rhardt’s voluntary dismissal of the 2005 claim negated the interruption of prescription as to his heart and lung claims that occurred when he filed the 2005 claim on July 21, 2005.
Even assuming that Hebert was decided on the basis of “lulling,” plaintiff has still not shown that lulling occurred in the instant case. Plaintiff bases its lulling argument on Mr. Hawkins’ testimony as to his understanding of an “agreement” among counsel and the court as a result of a status conference. A review of Mr. Hawkins’ testimony during the April 14, 2011 hearing on JPFD’s exception shows that the court scheduled a status conference to receive a case status update in advance of the matter proceeding to trial:
MR. HARMON:
Did you have any discussions that may have involved the Court regarding the status of settlement or the status of the case, or do you recall?
MR. HAWKINS:
Well, the relevant one was the telephone status conference that the parties had prior to the Motion to Dismiss without Prejudice. When the Court asked for a status update and both parties advised him that we were attempting to resolve it and that we were close and we anticipated it happening quickly and that we did not see this matter proceeding to trial.
The record does reveal any such agreement between the parties as to Mr. Eh-rhardt’s ability to voluntarily dismiss his pending claim and then re-file the same claim without objection. However, the record does clearly show that the 2005 claim was voluntarily dismissed by Mr. Ehrhardt on September 30, 2009, which, as set forth in plaintiffs brief, was one day before the matter was set for trial on October 1, 2009.
The applicable prescriptive period for the plaintiffs claims at issue is found in LSA-R.S. 23:1209(C). This statute sets *1229 forth the prescriptive period for claims 19of unpaid medical benefits under Louisiana’s Worker’s Compensation Law. It provides:
All claims for medical benefits payable pursuant to R.S. 23:1203 shall be forever barred unless within one year after the accident or death the parties have agreed upon the payments to be made under this Chapter, or unless within one year after the accident a formal claim has been filed with the office as provided in this Chapter. Where such payments have been made in any case, this limitation shall not take effect until the expiration of three years from the time of making the last payment of medical benefits.
LSA-R.S. 23:1209(C) (emphasis added).
The record reflects that Mr. Eh-rhardt was diagnosed with “heart and lung disease” on April 7, 2005. Therefore, any claim for medical benefits had to be filed within one year of that date. Mr. Eh-rhardt’s 2005 claim was timely filed on July 21, 2005, thereby interrupting prescription. See LSA-C.C. art. 3462. However, this claim was voluntarily dismissed by Mr. Ehrhardt’s counsel on September 30, 2009. Under a clear interpretation of LSA-C.C. 3463, the interruption of prescription that initially occurred when the suit was filed on July 21, 2005 is considered never to have occurred, in light of Mr. Ehrhardt’s September 30, 2009 voluntary dismissal, regardless of whether the claim was dismissed with or without prejudice. Accordingly, because the 2005 claim was voluntarily dismissed on September 30, 2009, the heart and lung claims asserted in the plaintiffs subsequent 2009 claim and 2011 claim have prescribed. This assignment of error has no merit.
ASSIGNMENT OF ERROR NUMBER TWO
In plaintiffs second assignment of error, it argues that the proposed settlement agreement reached by both parties during the October 2008 mediation indicates an acknowledgment such that prescription was interrupted.
LSA-C.C. art. 3464 provides that “[prescription is interrupted when one acknowledges the right of the person against whom he had commenced to | inprescribe.” La. Civ.Code art. 3464 (2012). An acknowledgment is “the recognition of the creditor’s right or obligation that halts the progress of prescription before it has run its course.” Gary v. Camden Fire Ins. Co., 96-0055, p. 4 (La.7/2/96), 676 So.2d 553, 556 (citation omitted). “It involves an admission of liability, either through explicit recognition of a debt owed, or through actions of the debtor that constitute a tacit acknowledgment. Id., 96-0055 at 4-5, 676 So.2d at 556. A tacit acknowledgment arises from a debtor’s acts of reparation or indemnity, unconditional offers or payments, or actions which lead the creditor to believe that the debtor will not contest liability.” Id. 96-0055, at 5, 676 So.2d at 556 (citation omitted).
Louisiana courts read Article 3464 to require more than settlement negotiations. Mullen v. Sears, Roebuck, & Co., 887 F.2d 615, 618 (5th Cir.1989). If the negotiations do not result in an agreement that the defendant is liable for the plaintiffs injuries, there is no acknowledgment sufficient to interrupt prescription. Id. (citations omitted).
Since Mr. Ehrhardt first filed his claim for heart and lung disease in 2005, defendant has consistently denied liability for the claim. This was acknowledged by Mr. Ehrhardt’s former counsel, Mr. Hawkins:
Q: You would agree, would you not, that from the moment that the Heart and Lung Claim was filed, Jefferson *1230 Parish’s formal position has been a denial of all aspects of that heart claim, would you not?
A: Yes. Its formal position in pleadings was a total denial.
Mr. Hawkins also acknowledged that although the parties had reached a proposed settlement during the mediation, defendant’s position was still a denial of liability on the 2005 claim:
Q: You would also agree, would you not, that in these settlement documents that were drafted as a result of the mediation, that in various spots in those documents, that there officially was writing such that the settlement was being entered into but Jefferson Parish’s formal position still was that the claim was being denied?
[nA: Yes.
In addition to defendant’s consistent denial of liability for Mr. Ehrhardt’s heart and lung claim, there is jurisprudence which holds that “[i]n a workers’ compensation case, a compromise settlement is not binding and enforceable until it has been judicially approved.” In re Succession of Tilley, 99-64 (La.App. 3 Cir. 6/2/99), 742 So.2d 9, 12. Thus, although a proposed settlement agreement was reached in the instant case, that agreement was never judicially approved by the OWC. In consideration of these facts, we find that defendant did not acknowledge liability on the 2005 claim by virtue of the mediation agreement.
Plaintiff also alleges that the status conference that preceded Mr. Ehrhardt’s voluntary dismissal of the 2005 claim constituted an acknowledgment. He cites the following testimony of Mr. Hawkins in support thereof:
After having a discussion with the Court and opposing counsel on the phone it was agreed that I would dismiss without prejudice, reserving my rights, and we would continue to try to negotiate the claim, which we did. And we did make progress, but were unable to reach a final amount.
[[Image here]]
The specific discussion was that we re-file without prejudice reserving our rights, because obviously if we filed the dismissal with prejudice, it would have been a problem, and that the parties would make a final push to get this thing resolved and closed. That’s essentially what we were doing.
So I believe it was the next day, maybe two days, we would have prepared a Motion to Dismiss without prejudice and filed it. And just that, made another big push to try to resolve all of the remaining issues in the case.
[[Image here]]
I would say that all parties were aware that we were going to dismiss without prejudice, but reserving our rights to reassert our claim if we weren’t able to resolve it with a final settlement.
We find that this testimony does not indicate that defendant acknowledged liability on the 2005 claim. To the contrary, this testimony indicates that the parties were working towards an agreement, but had not yet reached one by the |iatime plaintiffs counsel voluntarily dismissed Mr. Ehrhardt’s 2005 claim. Mr. Hawkins’ testimony as to his unilateral understanding of his ability to re-file the claims asserted in Mr. Ehrhardt’s 2005 claim without an objection of prescription by JPFD is not sufficient to constitute an acknowl-edgement of those claims.
In addition, plaintiff argues that defendant’s payment of $7,500 for funeral/burial expenses operates as an acknowledgment. We disagree. The receipt and release agreement regarding the funer *1231 al/burial expenses contains specific language that the $7,500 settlement agreed upon by the parties “solely relat[es] to the claims for funeral/burial expenses” and that JPFD “specifically denies that Branch J. Ehrhardt sustained any physical injuries or occupational diseases pursuant to his duties on April 7, 2005 ...”
In light of the language limiting the $7,500 settlement to funeral/burial expenses and JPFD’s specific denial of liability for Mr. Ehrhardt’s alleged occupational disease, we find that defendant’s payment of $7,500 for funeral/burial expenses did not operate as an acknowledgment of liability on the 2005 claim.
Therefore, we conclude that defendant did not acknowledge liability on the 2005 claim. Thus, prescription was not interrupted. This assignment of error lacks merit.
ASSIGNMENT OF ERROR NUMBER THREE
In plaintiffs third assignment of error, it submits a policy argument, in which it contends that the granting of the exception of prescription is in violation of the policy considerations underlying the principle of prescription.
The Louisiana Supreme Court has held that “in the absence of a clear indication of legislative intent, prescriptive statutes which can be given more than one reasonable interpretation should be construed to maintain rather than bar the action.” Taylor v. Liberty Mut. Ins. Co., 579 So.2d 443, 446 (La.1991). “The fundamental purpose of prescription statutes is only to afford a defendant security ]1sof mind and affairs if no claim is made timely, and to protect him from stale claims and the loss or non-preservation of relevant proof.” Moore v. Gencorp, Inc., 633 So.2d 1268, 1272 (La.1994).
With respect to the policy considerations behind voluntary dismissals under Article 3463, the Fourth Circuit has interpreted the predecessor to LSA-C.C. art. 3463, i.e., LSA-C.C. art. 3519,[5] as follows:
The purpose of the article is to prohibit the plaintiff from voluntarily dismissing his suit on a cause of action and later filing a second suit on the same cause of action. By taking away the benefit of the original interruption, the article prevents the plaintiff from claiming that a new prescriptive period commenced when he dismissed the suit which had previously interrupted prescription. The basic purpose of prescription — to provide legal stability — is thus fulfilled.
Levy v. Stelly, 277 So.2d 194, 195-96 (La.App. 4 Cir.1973).
Contrary to plaintiffs contention, we find the policy considerations underlying the principle of prescription favor defendant. To allow Mr. Ehrhardt to dismiss his claim and subsequently re-file it without any time limitations would require defendant to defend against the claim indefinitely, which is precisely what the principle of prescription aims to prevent. Under the holding of Taylor v. Liberty Mut. Ins. Co., 579 So.2d 443, 446 (La.1991), we find that LSA-C.C. art. 3463 cannot be given more than one reasonable interpretation. As such, we see no reason to depart from the letter of the law under Article 3463. This assignment of error lacks merit.
ASSIGNMENT OF ERROR NUMBER FOUR
In plaintiffs fourth assignment of error, it argues that the supplemental and *1232 amended disputed compensation complaint filed on January 20, 2011 is timely as it relates back to the date of the original filing of the 2009 claim.
114LSA-C.C.P. art. 1153 provides that when the action or defense asserted in the amended petition or answer arises out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of filing the original pleading.
The Third Circuit has held that LSA-C.C.P. art. 1158 should be applied liberally and without undue restriction by technical rules, especially in workers’ compensation cases. Baker v. Conagra Broiler Co., 640 So.2d 494, 497 (La.App. 3 Cir.1994), writ denied, 94-1435 (La.9/23/94), 642 So.2d 1289 (citations omitted). However, “[i]n order for a second amended petition to relate back, the original petition must have been timely filed.” Raymond v. Orleans Parish Sch. Bd., 03-0560, p. 5 (La.App. 4 Cir. 9/3/03), 856 So.2d 27, 31 (citing Ford v. Murphy Oil, U.S.A., Inc., 96-2913, p. 1 (La.10/10/97), 710 So.2d 235).
In the instant case, plaintiffs 2009 claim, filed on November 6, 2009, sought “death benefits and unpaid medical bills incurred for treatment of heart and lung disease.” Plaintiffs 2011 claim, filed on January 20, 2011, sought “any and all accrued and owed benefits relating to his claim pursuant to the Heart and Lung Act, LSA-R.S. 33:2581, et seq., including but not limited to: amounts due and owing or accrued for wage benefits, medical treatment, medical costs and expenses, and other issues and claims as set forth in the WC-1008 ... including claims for penalties, attorney fees and costs.” This claim also sought medical expenses relating to Mr. Eh-rhardt’s 2003 knee injury, medical expenses relating to his lap band surgery, death benefits, autopsy expenses, attorney’s fees, and several other costs and expenses.
While plaintiffs 2011 claim arises out of the conduct, transaction, or occurrence set forth in the 2009 claim, the 2009 claim, as we have found, has prescribed. Thus, we find that because the 2009 claim is prescribed, the 2011 claim cannot relate back to that prescribed claim under LSA-C.C.P. art. 1153.
LfiPlaintiff also argues that accrued benefits owed at the time of Mr. Ehrhardt’s death, which were sought in the 2009 claim, are heritable and due to his estate. In support of this argument, plaintiff relies on Turner v. S. Wheel & Rim Serv., Inc., 332 So.2d 770 (La.1976). Plaintiff is correct in the assertion that accrued benefits owed at the time of Mr. Ehrhardt’s death are heritable. However, the rules of prescription are still applicable.
In Turner, the plaintiffs were the parents of a former employee of defendant Southern Wheel and Rim Service, Inc. Id. On November 16, 1973, their son was injured, allegedly while performing duties within the course and scope of hazardous employment. Id. Plaintiffs contended that he was totally disabled as a result of this injury. Id., 332 So.2d at 770-71. Before filing suit to claim workers’ compensation benefits, their son was killed in an accident totally unrelated to the work-connected injury. Id., 332 So.2d at 771. On November 6, 1974, plaintiffs brought a compensation suit to recover disability benefits that had accrued in their son’s favor prior to his death and the unreim-bursed medical expenses that he had incurred in treating the work-connected injury. Id. The supreme court found that the right to claim workers’ compensation benefits accrued to the employee prior to his death is heritable. Turner, 332 So.2d at 772.
*1233 We find Turner distinguishable from the present case. In Turner, the heirs brought suit within one year of the work-related injury. Here, plaintiff did not file suit within one year of the claimed work-related injury — the April 7, 2005 heart and lung disease diagnosis. Plaintiff filed suit on November 6, 2009, more than four years after the work-related injury. Since we have found that prescription was not interrupted, we find that, pursuant to LSA-R.S. 23:1209(C), the claim for accrued medical benefits had prescribed at the time plaintiff filed suit in 2009. This assignment of error has no merit.
lifiHowever, regarding the death benefits sought in the 2009 claim, “[pjursu-ant to LSA-R.S. 23:1231, death benefits are recoverable only if an employee’s death occurs within two years of the last treatment resulting from the accident by personal injury or occupational disease upon which the claim is based.” Jonise v. Bologna Bros., 01-3230 (La.6/21/02), 820 So.2d 460, 462. “This two year time period is neither a prescriptive nor peremptive period.” Id. “Rather, it ‘is a condition precedent to the accrual of the right of action for the dependents.’ ” Id. (citation omitted). Therefore, if an employee’s death occurs within two years of his last treatment resulting from the work related accident, the employee’s dependents have a right of action for death benefits pursuant to LSA-R.S. 23:1231. Id. (citations omitted).
The record indicates that Mr. Ehrhardt was receiving treatment for his condition from a cardiologist, Dr. Luis Soto, as late as 2007. Since Mr. Ehrhardt received this treatment within two years of his death on November 11, 2008, we find the condition precedent of LSA-R.S. 23:1231 is satisfied.
In addition to this condition precedent, a dependent has one year from the date of the employee’s death to file a claim for death benefits. Jonise, 01-3230 at 4, 820 So.2d at 463 (citing LSA-R.S. 23:1209(A)). Because plaintiffs 2009 claim was filed on November 6, 2009, within one year of Mr. Ehrhardt’s death on November 11, 2008, we find that plaintiffs claim for death benefits has been preserved.
INTERVENOR’S ASSIGNMENT OF ERROR
In intervenor’s assignment of error, he argues that by defendant’s payment of funeral expenses, the three year prescriptive period provided in LSA-R.S. 23:1209(0[6] was interrupted.
117Intervenor contends that funeral expenses constitute “medical payments,” but cites no authority in support of this contention. We disagree. In reviewing the language of LSA-R.S. 23:1209(0), we note that it relates specifically to claims for medical benefits that might be payable pursuant to LSA-R.S. 23:1203 — the statute that establishes an employer’s obligation to pay an injured employee’s medical expenses. In Boquet v. Tetra Tech., Inc., 2002-1634 (La.2/25/03); 839 So.2d 13, the Louisiana Supreme Court addressed a similar issue. Specifically, the Court determined whether an employer’s payment of workers’ compensation indemnity benefits interrupts prescription as to an employee’s claim for medical benefits under La. R.S. 23:1209(C). The Court concluded as follows:
We find the language at issue in La. R.S. 23:1209(0 is clear, unambiguous, and does not lead to absurd consequences. Subsection (C) applies to “all claims for medical benefits payable pursuant to R.S. 23:1203.”
*1234 [[Image here]]
Because the legislature chose to qualify the three-year period with the last payment of “medical” benefits, instead of simply the last payment of “benefits,” we are constrained to find that only defendants’ payment of medical benefits serves to interrupt the three-year prescriptive period established in La. R.S. 23:1209(C).
Id. at 17-18.
Therefore, we find that when LSA-R.S. 23:1209(0 speaks of payments made or not made within the three year prescriptive window, it refers to payments of medical benefits under LSA-R.S. 23:1203 only. As noted above, intervenor has failed to provide any authority in support of his argument that payment of funeral expenses constitutes payment of medical benefits under LSA-R.S. 23:1203. Moreover, the legislature has drafted two separate provisions addressing medical payments and burial expenses under the Louisiana Workers’ Compensation Act. See, LSA-R.S. 23:1210.
Furthermore, the parties’ receipt and release agreement contains specific language that the $7,500 settlement “solely relat[es] to the claims for funeral/burial | |8expenses.” In light of the foregoing, we find that medical payments do not encompass funeral/burial expenses. Therefore, we find this assignment of error has no merit.
Although not stated in his assignment of error, intervenor also seems to argue that the preparation of a Medicare Set Aside (“MSA”) constituted an acknowledgment, which in turn interrupted prescription. In support of this argument, intervenor relies on Reed v. Mid-States Wood Preservers, Inc., 43,799 (La.App. 2 Cir. 12/3/08), 999 So.2d 189, writ denied, 09-0009 (La.2/20/09), 1 So.3d 500. In Reed, the plaintiff, an employee of the defendant, Mid-States, sustained an on-the-job injury in 1998, entitling him to temporary total disability benefits. Id., 43,799 at 1, 999 So.2d at 190. In 2006, the plaintiff filed a disputed compensation claim alleging that his injury resulted in his permanent total disability. Id.
In 2005, the parties engaged in settlement negotiations. Id., 43,799 at 1, 999 So.2d at 191. The defendant claimed that because the plaintiff was Medicare eligible, the provisions of the Medicare Secondary Act necessitated that a Medicare Set-Aside Analysis (“MSA”) be conducted to determine the possible amount of the plaintiffs future medical needs. Id. During settlement negotiations, an initial MSA was performed and the results were given to the plaintiff. Id. As the settlement negotiations continued, a second MSA was performed — again, these results were shared with the plaintiff. Id. However, the parties did not reach a settlement. Id.
Because the plaintiffs disputed compensation claim was filed beyond the three-year prescriptive period as provided in LSA-R.S. 23:1209(C), he bore the burden of proving that the prescription of his claim was interrupted. Reed, 43,799 at 4, 999 So.2d at 192. The plaintiff argued that prescription was interrupted by the defendant’s acknowledgment of his claim, i.e., the transmitted MSA. Id. The | i9Second Circuit found that the MSAs transmitted to the plaintiff, although prepared in anticipation of a settlement negotiation, constituted an explicit acknowledgment of Reed’s claim, thereby interrupting prescription. Id., 43,799 at 5, 999 So.2d at 192.
We find the instant case distinguishable from Reed. In Reed, the court relied on the fact that the MSAs were transmitted to the plaintiff. In the instant case, at the *1235 hearing on the exception of prescription, Mr. Hawkins testified as follows:
Q: Do you have any reason to dispute that while a MSA was, in fact, done, it absolutely was never given to you or your client prior to mediation?
A: I agree with that.
The Reed court also relied on the fact that the MSAs did not contain a statement in which defendant denied liability. Id., 48,799 at 5, 999 So.2d at 192-98. At the hearing, Mr. Hawkins testified as follows:
Q: You would also agree, would you not, that in these settlement documents that were drafted as a result of the mediation, that in various spots in those documents, that there officially was writing such that the settlement was being entered into but Jefferson Parish’s formal position still was that the claim was being denied?
A: Yes.
Therefore, in light of the fact that the MSA was not transmitted to Mr. Ehrhardt or his attorney prior to mediation and that defendant consistently denied liability throughout negotiations and mediation, we find that the MSA did not constitute an acknowledgment interrupting prescription. This argument lacks merit.
CONCLUSION
“If evidence is introduced at the hearing on the peremptory exception of prescription, the district court’s findings of fact are reviewed under the manifest error-clearly wrong standard of review.” Lee v. Prof'l Const. Services, Inc., 07-865, p. 6 (La.App. 5 Cir. 3/11/08), 982 So.2d 837, 840, writ denied, 08-0782 (La.6/6/08),20 983 So.2d 919. “If the findings are reasonable in light of the record reviewed in its entirety, an appellate court may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.” Id.
After considering the entire record, we find the WCJ’s findings were reasonable and not clearly wrong. Accordingly, for the reasons stated herein, the judgment granting the Jefferson Parish Fire Department’s exception of prescription as to the Estate of Branch Ehrhardt’s heart and lung claims asserted in the 2009 claim and the 2011 claim is affirmed.

AFFIRMED

. The record indicates that on February 7, 2006, Mr. Ehrhardt re-filed with the OWC the same disputed compensation claim, Form 1008, that he previously filed with the OWC on July 21, 2005.

. The May 13, 2011 judgment further ordered that the defendant’s exception is denied with respect to "any other claims asserted in the original and/or amended 1008."

. In intervenor's brief, he cites LSA-R.S. 23:1201(C). We find this to be a clerical error and assume, for purposes of this opinion, that intervenor intended LSA-R.S, 23:1209(C).

. Comment (a) of the 1982 Revision Comments to LSA-C.C. art. 3463 provides that the second sentence of LSA-C.C. art. 3463 is based on LSA-C.C. art. 3519 of the Louisiana Civil Code of 1870 and does not change the law.

. Comment (a) of the 1982 Revision Comments to LSA-C.C. art. 3463 provides that the second sentence of LSA-C.C. art. 3463 is based on LSA-C.C. art. 3519 of the Louisiana Civil Code of 1870 and does not change the law.

. In intervenor’s brief, he cites LSA-R.S. 23:1201 (C). We find this to be a clerical error and assume that intervenor intended LSA-R.S. 23:1209(C).