HOLDRIDGE, J.
12This case presents a res nova issue for our consideration: specifically, whether an employer’s payment for a second medical opinion examination of a claimant by the employer’s physician, who is not the claimant’s treating physician; constitutes the payment of a “medical benefit” for purposes of prescription under Lá. R.S. 23:1209(C). For the following reasons, we conclude that it does not.
FACTS AND PROCEDURAL HISTORY
On August 24, 2006, claimant, Denise Kennedy, was injured during her employment with Washington/St, Tammany Regional Medical Center (WSTRMC) as a result of a slip and fall. Thereafter, WSTRMC’s workers’ compensation insurer, FARA, began paying for Ms. Kennedy’s treatment for her work-related injury.
In 2007, Ms. Kennedy was under the treatment of Dr. Lee in Hattiesburg, Mississippi. On March 20, 2007, Ms. Kennedy saw Dr. Richard Corales for a “further neurosurgical evaluation,” presumably' at the request of WSTRMC and/or FARA. Based on his evaluation. Dr. Corales felt that Ms. Kennedy was a candidate for a three-level anterior discectomy and fusion. Consequently, her treating physician, Dr. Lee, performed the surgery on July 18, 2007; Following further treatment; it appeal’s Dr. Lee released Ms. Kennedy'in February 2010, finding that she had reached maximum medical improvement and recommending symptomatic treatment thereafter.[1] Following her release from Dr. Lee, ho other medical expenses were paid in 2010.
In 2011, FARA paid a total of $3,205.00 on Ms. Kennedy’s behalf. Of that amount, $5.00 was paid to Southern Medical Imaging for “Radiology-X-Rays” ‘ On July 22, 2011. The remaining $3,200.00 was paid to Dr. Corales’ medical practice, [ ¡¡Southern Brain & Spine, for missed appointments in August, September; and November 2011,[2] Presumably these appointments were made for Ms'. Kennedy by WSTRMC/ FARA, given that FARA was charged for each of the missed appointments. See 40 LAC.Pt’I, § 5121..
On January 11, 2012, FARA sent Ms. Kennedy, through her attorney, a “NOTICE OF SECOND MEDICAL OPINION.” The notice informed Ms. Kennedy that a second medical opinion (SMO) appointment had been scheduled for her with Dr. Corales at Southern Brain & Spine for 10:30 a.m. on February 9, 2012. The following day, FARA printed a $2,000.00 check for Southern Brain & Spine to cover the cost of the appointment. Southern Brain & Spine deposited the check on January 27,2012.
*172 On February 9, 2012, Dr. Corales performed the SMO examination of Ms. Kennedy as scheduled.[3] That same day, he drafted his report for FARA addressing the various medical records he had been given to review, the results of his limited physical exam, and, finally, his impression and recommendations. He opined that Ms. Kennedy had reached “maximum medical improvement” and that she would be “limited to a sedentary job or a highly restricted light duty job.” However, he noted that she had not worked for many years and was not optimistic about her motivation to pursue gainful employment. He believed that she would not benefit from further surgery. He concluded that: she had received appropriate care from Dr. Lee and his associates; he did not expect her to have a progression of problems |4in the cervical spine anytime in the near future; and that she pursue symptomatic treatment “as she is receiving.”[4]
On January 26, 2015, Ms. Kennedy filed a Disputed Claim for Compensation— LWC Form 1008 — indicating a “BONA-DISPUTE” regarding “Medical treatment” and “Choice of Physician” as well as seeking an award of penalties and attorney fees. In response, WSTRMC filed a peremptory exception of prescription urging that any claim for medical benefits was prescribed under La. R.S. 23:1209(C), which provides:
All claims for medical benefits payable pursuant to R.S. 23:1203 shall be forever barred unless within one year after the accident or death the parties have agreed upon the payments to be made under this Chapter, or unless within one year after the accident a formal claim has been filed with the office as provided in this Chapter. Where such payments have been made in any case, this limitation shall not take effect until the expiration of three years from the time of making the last payment of medical benefits. [Emphasis added.]
WSTRMC maintained that because her accident occurred in 2006 (more than eight years before she filed her claim) and because its last payment of medical benefits was on July 22, 2011 (more than three years before she filed her claim), her claim for medical benefits was barred. Ms. Kennedy opposed the exception, arguing that WSTRMC/FARA’s payment to Dr. Co-rales for the SMO examination constituted a payment of medical benefits. She further asserted that she had filed her claim within three years of the date that payment was made. WSTRMC vigorously contested both of her assertions.
A contradictory hearing on WSTRMC’s exception was held April 23, 2015, with both parties presenting evidence. Later that day, the Workers’ Compensation Judge (WCJ) issued written reasons for judgment indicating the July 22, 2011 | ^payment of $5.00 to Southern Medical Imaging, located in Mississippi where Ms. Kennedy lives, was the last payment of medical benefits made for the purposes of La. R.S. 23:1209(C). The WCJ noted that all payments after that point were for Dr. Corales’ practice, Southern Brain & Spine, located in the New Orleans area. The WCJ found that Dr. Corales was “unquestionably [WSTRMC’s] Second Medical Opinion (SMO) physician” and concluded *173 that WSTRMC’s payment to its SMO physician did “not interrupt prescription as to ... medical benefits.” Therefore, because more than three years had elapsed since the last payment of medical benefits, the WCJ concluded that Ms. Kennedy’s claim for medical benefits was- prescribed. Accordingly, the WCJ signed a judgment sustaining WSTRMC’s peremptory exception of prescription and dismissing Ms. Kennedy’s claim for medical benefits with prejudice.' This appeal by Ms. Kennedy followed.
LAW AND DISCUSSION
Pursuant to 2012 La. Acts, No. 860, § 1, the legislature enacted La. R.S. 23:1020.1 iterating the purposes of the Louisiana Workers’ Compensation Law (Law), including the payment of “medical expenses that are due to all injured workers,” and instructing that the Law be interpreted “so as to assure the delivery of benefits to an injured employee” in accordance with its provisions. La. R.S.’ 23:1020.1(B)(2) & (C)(1).[5]
| (¡Under the basic principles of statutory construction, prescription statutes are strictly construed against prescription and in favor of maintaining the cause of action sought to be extinguished by it. Arrant v. Wayne Acree PLS. Inc., 2015-0905 (La.1/27/16), 187 So.3d 417, 424. Thus, if there are two possible constructions, the one which favors maintaining an action, as opposed to barring it, should be adopted. Oil Ins. Ltd. v. Dow Chemical Co., 2007-0418 (La.App. 1 Cir. 11/2/07), 977 So.2d 18, 22, writ denied, 2007-2319 (La.2/22/08), 976 So.2d 1284. However, that does not mean that every prescriptive statute must be interpreted in order to avoid prescription. Turner v. Willis Knighton Med. Ctr., 2012-0703 (La.12/4/12), 108 So.3d 60, 65. The clear words of the statute cannot be disregarded for the purpose of maintaining the action. David v. Our Lady of the Lake Hosp., Inc., 2002-2675 (La.7/2/03), 849 So.2d 38, 46-47.
Ordinarily, the party raising the objection of prescription bears the burden of proof at the trial of the peremptory exception. Campo v. Correa, 2001-2707 (La.6/21/02), 828 So.2d 502, 508. However, if prescription is evident on the face of the pleadings, the burden shifts to the plaintiff to show that the action has not prescribed by showing a suspension or interruption of the prescriptive period. Theodore v. Iberville Par. Sch. Bd., 2012-0746 (La.App. 1 Cir. 1/8/13), 112 So.3d 270, 271.
At the trial of a peremptory exception, evidence may be .introduced to support or controvert any .of the objections pleaded, when the grounds.thereof do not appear from the petition. La. C.C.P. art. *174 931. If evidence is introduced at the hearing on the peremptory exception raising the objection of prescription, a WCJ’s findings of fact are reviewed under the manifest error or -clearly wrong standard of review. Theodore, 112 So.3d at 271. However, the proper application and interpretation of a statute involves a question of law and is subject to de novo preview. Holly & Smith Architects, Inc. v. St. Helena Congregate Facility, Inc., 2006-0582 (La.11/29/06), 943 So.2d 1037, 1045; McKenzie v. Imperial Fire and Cas. Ins. Co., 2012-1648 (La.App, 1 Cir. 7/30/13), 122 So.3d 42, 46, writ denied, 2013-2066 (La.12/6/13), 129 So.3d 534.
This case necessarily requires us to examine three respective statutory provisions: La. R.S. 23:1209(0) (which provides the prescriptive period for medical benefit claims); La. R.S, 23:1203(A) (which imposes an obligation on an employer to pay medical benefits)^ and La. R.S, 23:1121(A) (which requires an employee to submit to examinations, such as SMO examinations, by an employer’s physician).
In Boquet v. Tetra Techs., Inc.,, 2002-1634 (La.2/25/03), 839 So.2d.13, 17, the Louisiana Supreme Court held that La. R.S; 23:1209(C) clearly and unambiguously sets forth the prescriptive period for “all claims for medical benefits payable pursuant to R.S. 23:1203.” See also Winro-Dixie Louisiana v. Physicians Surgical Specialty Hosp., 2013-2680 (La.2/21/14), 156 So.3d 1129, 1130 (“By its terms, La. R.S. 23:1209(C) sets forth the prescriptive period for ‘claims for medical benefits payable pursuant .to R.S. 23:1203’ ”). The Boquet court further held that‘the language of La. R.S. 23:1209(0 “leads to the inescapable conclusion that when medical benefits have been paid, the time limitation for making additional claims for medical benefits is three years from the last payment of medical benefits.” Boquet, 839 So.2d at 17. Thus, in a case where medical payments have been made, a claimant has three years from the date of the last payment of medical benefits to file his claim for additional medical benefits. Boquet, 839 So.2d at 15.
Consequently, courts have concluded that “the last payment of medical benefits” triggering the three-year prescriptive period specifically refers to the |spayments of medical expenses by an employer pursuant to its obligation under La, R.S. 23:1203. See Estate of Ehrhardt v. Jefferson Par. Fire Dep’t, 2012-319 (La.App. 5 Cir. 1/30/13), 108 So.3d 1223, 1234 (“[Wjhen [La.] R.S. 23:1209(0 speaks of payments made or not made within the three year prescriptive window, it refers to payments of medical benefits under [La.] R.S. 23:1203 only”). See also Stroud v. Morrison Nursery, 2004-1610 (La.App. 3 Cir. 4/6/05), 899 So.2d 840, 843 (holding that, only work-related, employer-paid medical benefits can serve to trigger or interrupt the three-year prescriptive period).
Under La. R.S. 23:1203, specifically Section (A),[6] an employer is obligated to furnish an injured employee with “all necessary drugs, supplies, hospital care and services, medical and surgical treatment, and any nonmedical treatment recognized by the laws of this state as legal.” (Emphasis added.) According to the plain words of the statute, “the employer’s liability is limited to that which is necessary.” Church Mut. Ins. Co. v. Dardar, 2013-2351 (La.5/7/14), 145 So.3d 271, 281. Thus, it is well-settled that the medical benefits that the employer is obligated to pay and *175 that the, employee is entitled to recover under La. R.S. 23:1203 are only those medical expenses that are necessary for the treatment of a medical condition caused by the work injury. See Id. If an employer, without justification, fails to provide such benefits timely, the employer may be assessed with- penalties and attorney fees. La. R.S. 23:1201(F).
From the foregoing, it can be distilled that, pursuant to La. R.S. 23:1209(0, an employee has three years from his employer’s last payment of medical benefits, i.e. last payment for expenses necessary for the treatment of his work injury, in which' to file a claim for additional medical benefits. '
|9In the instant'matter, the WCJ concluded that Ms. Kennedy’s claim for additional medical benefits was prescribed because it was not brought within three years of WSTRMC’s last payment of medical- benefits, which she determined was made in July 2011.. The WCJ found that Dr. Corales was not.Ms'. Kennedy’s treating physician, but was merely WSTRMC’s SMO physician, when he examined Ms. Kennedy in February 2012. Based on the record before us, this factual finding is not manifestly erroneous. Thus, all that remains for us to determine is whether the WCJ was legally correct in concluding that WSTRMC/FARA’s payment for Dr. Co-rales’ limited SMO examination of Ms. Kennedy was not an expense necessary for the treatment of her injury and therefore did not constitute the “last payment of medical benefits.”’ After a. thorough review of the relevant law, we find the WCJ’s conclusion to be correct.
Louisiana Revised Statute 23:1121(A), which governs medical examinations of injured employees such as the SMO performed herein, provides, in part:
An-injured employee shall submit himself to an examination by a duly qualified medical practitioner provided and paid for by the employed, as soon after the accident as demanded, and from time to time thereafter as often as may be reasonably necessary and at -reasonable hours and places, during the pen-dency of his claim'for compensation or during the receipt by him of payments under this Chapter.
“The statute is clear that an employee shall submit to a medical examination as often as may be reasonably necessary.” Gee Cee Grp., Inc. v. Thomas, 2012-0514 (La.App. 4 Cir. 10/31/12), -103 So.3d 671, 675. Thus, it grants a conditional right to the employer while imposing a commensurate-duty on the employée. “If the employee- refuses.-to submit himself to a medical examination at the behest of the employer ..., or in anywise obstructs the same, his right to compensation • and to take or prosecute any further proceedings under this Chapter may be suspended by the employer or payor until the examination takes place.” La. .R.S. -23:1124(A).
| ⅜ nThese provisions were primarily enacted for the protection of the employer and to' promote justice; .nevertheless the rights of the injiifed employée cannot 'be entirely overlooked. Kirby v. Terminal Paper Bag Co., 16 So.2d 597, 599 (La.App. 2 Cir.1943). See also Atwell v. First Gen. Servs., 2006-0392 (La.App.-1 Cir. 12/28/06), 951 So.2d 348, 357, writ denied, 2007-0126 (La.3/16/07), 952 So.2d 699:
Thus, an injured employee need only to submit himself for examination, , not. treatment, since the employee has the right to be treated by a physician of his own choosing and cannot be forced to submit to treatment by a physician of his employer’s choice. Delafield v. Maples, 6 So.2d 41, 44 (La.App. 2 Cir.1942). Rather, the SMO examination is largely limited to *176 obtaining information for the employer regarding the employee’s current condition, treatment needs, as well as his ability to return to work. See Gee Gee Grp., 103 So.3d at 672. Consequently, the results of the examination could serve to verify for an employer the continued veracity of the employee’s claim, or conversely, be used by the employer to reasonably controvert that claim. See La. R.S. 23:1201(F)(2); Roussell v. St. Tammany Par. Sch. Bd., 2004-2622 (La.App. 1 Cir. 8/23/06), 943 So.2d 449, 462, writ not considered, 2006-2362 (La.1/8/07), 948 So.2d 116.
In light of the foregoing, we cannot say that the payment for the SMO examination by WSTRMC’s physician was the payment of a medical benefit necessary for the treatment of Ms. Kennedy’s condition. While it is doubtful whether it could be construed as treatment, it certainly cannot be deemed to be necessary. Louisiana Revised Statute 23:1121(A) conferred an optional, albeit conditional, right on WSTRMC; WSTRMC certainly had no obligation to conduct the particular SMO examination, much less to provide it as a “benefit” to Ms. Kennedy. On the contrary, to the extent that .it was reasonably necessary, Ms. | n Kennedy had the duty to submit to the examination for the “benefit” of WSTRMC. And while WSTRMC faced the potential imposition of penalties and attorney fees for failing to timely pay medical benefits required by La. R.S. 23:1203, it was Ms. Kennedy who faced the potential penalty of the discontinuation of her benefits if she failed to comply with the SMO examination. See La. R.S. 23:1201(F); La; R.S. 23:1124(A). Thus, WSTRMC’s payment to its own physician for an SMO was not a “medical [expense] due to all injured workers,” which the Law seeks to ensure. La. R.S. 23:1201.1(B)(2). See also Price v. Fireman’s Fund Ins. Co., 602 So.2d 1078, 1082 (La.1987); Lynn v. Berg Mech., Inc., 682 So.2d 902, 913 (La. App. 2 Cir.1991) (generally holding that employers and insurers are not liable under La. R.S. 23:1203 for medical expenses incurred for purposes of litigation).
While we are cognizant of the imperative to construe prescriptive statutes strictly, we simply cannot interpret the “payment of medical benefits” to include WSTRMC’s payment to its own physician for the particular SMO examination conducted herein.[7] Indeed, our conclusion comports with the well-recognized purpose of La. R.S. 23:1209, which is to protect employers from stale claims by employees, as well as the jurisprudence interpreting it. See Winn Dixie Louisiana, 156 So.3d at 1130.
Because WSTRMC/FARA’s payment to Dr. Corales for the SMO examination did not constitute a “payment of medical benefits” under La. R.S. 23:1209(0, Ms. Kennedy’s claim is prescribed. Ms. Kennedy has not offered any other grounds to suggest the interruption or suspension of the applicable 112prescriptive period. Therefore, we find that the WCJ properly sustained WSTRMC’s peremptory exception of prescription.[8]
CONCLUSION
.For all of the foregoing reasons, we affirm the judgment of the WCJ sustaining *177 Washington/St. Tammany Regional Medical Center’s peremptory exception raising the objection of prescription and dismissing Denise Kennedy’s claim for medical benefits with prejudice. All costs of this appeal are assessed to Denise Kennedy.
AFFIRMED.

. This information appears in Dr. Corales’ report discussing Ms. Kennedy's medical records that were provided for his review and is substantiated by FARA’s “Individual Claim Report” for Ms, Kennedy.

. A copy of Ms. Kennedy's "Patient Ledger” from Southern Brain & Spine was admitted into evidence at the hearing on WSTRMC’s exception. It reflects: a $500.00 charge for a missed appointment on August 9, 2011; a total of $700.00 charged for missed appointments on September 9, 2011; and a $2,000.00 charge for a missed appointment on November 30, 2011.

. For this appointment, the "Patient Ledger” reflects a code of "99456” and the notation "Work related eval/non treating phy.”

. FARA's "Individual Claim Report” does not reflect payments for any actual treatment for Ms. Kennedy’s condition following her release by Dr. Lee on February 19, 2010, except possibly the $5.00 payment to Southern Medical Imaging on July 22, 2011,

. Further, La. R.S. 23:1020.1(D) provides, in pertinent part:
(2) Disputes concerning the facts in workers’ compensation cases shall not be given a broad, liberal construction in favor of either employees or employers; the laws pertaining to workers’ compensation shall be construed in accordance with the basic principles of statutory construction and hot in favor of either employer or employee.
(3) According to Article III, Section 1 of the Constitution of Louisiana, the legislative powers of the state are vested solely in the legislature; therefore, when the workers’ compensation statutes of this state are to be amended, the legislature acknowledges its responsibility to do so. If the workers' compensation statutes are to be liberalized, broadened, or narrowed, such actions shall be the exclusive purview of the legislature.
The instant appeal involves’ a prescription statute. Just as in non-workers’ compensation cases, the statute must be strictly construed against prescription and in favor of maintaining the action. Consequently, any intended change in the Law effected by La. R.S, 23; 1020.1(D) is not implicated in this appeal, and we do not address it.

. The remaining sections of La. R,S. 23:1203 address other obligations of the employer which are not germane here.

. Under the circumstances of this case, it cannot be said that in exercising its right to obtain a SMO examination, WSTRMC 'lulled” Ms. Kennedy into a false sense of security and thus induced her to delay filing her claim until after the three-year prescriptive period had run, particularly in light of her right to receive a copy of the report and learn of its findings. See La. R.S. 23:1125(A).

. In light of our conclusion on this issue, we pretermit consideration of Ms. Kennedy's remaining assignment of error addressing the actual date payment was made for the SMO.