499 So.2d 1293 (1986)
Jose TORRES, individually and on Behalf of his minor son Octavio Torres
v.
UNITED STATES FIDELITY AND GUARANTY COMPANY, David's Plumbing Company Inc., and Roy Duplessis, Jr.
No. CA-4387.
Court of Appeal of Louisiana, Fourth Circuit.
December 9, 1986.
*1294 Eugene D. Brierre, New Orleans, for defendant/appellee.
Frank J. D'Amico, Sophia Pappas Barnett, New Orleans, for plaintiff/appellant.
Before BARRY, BYRNES and LOBRANO, JJ.
LOBRANO, Judge.
This appeal arises out of a judgment rendered in favor of Jose Torres, individually and on behalf of his minor son Octavio Torres and against United States Fidelity and Guaranty Company (USF & G), David's Plumbing Company and Roy Duplessis, Jr. (Duplessis) for personal injuries sustained by Octavio Torres when he was struck by a vehicle operated by Duplessis.

FACTS:
Our discussion of the facts is based on the stipulations of both parties filed in the record, and plaintiff's transcribed testimony. The transcript of the other testimony was not provided this Court, and was apparently lost by the Court reporter.
On December 3, 1984 at approximately 1:30 p.m., Octavio Torres, age 5, was struck by a 1968 Chevrolet pick up truck owned and operated by Duplessis. The accident occurred in the 2600 block of Tupelo Street near the intersection of 27th Street in the Parish of Jefferson. At the time of the accident Duplessis was enroute to the home of his employer, David Giamalvo (Giamalvo), owner of David's Plumbing Company, to discuss a pay raise.
On the day of the accident Duplessis worked from 7:12 a.m. until he punched out at 1:30 p.m. Immediately after work Duplessis left for Giamalvo's home to discuss the pay raise. While enroute to Giamalvo's home, Duplessis passed a group of children playing in a space walk on the left hand side of Tupelo Street. Finding that Giamalvo was not at home, Duplessis turned around and continued north on Tupelo, passing the children again enroute to his brother's home on Jasper Street. Discovering his brother was not at home, Duplessis waited a few minutes before beginning his return trip to Giamalvo's home. Duplessis turned right onto 27th Street from Jasper Street and saw Giamalvo traveling towards him. Giamalvo turned left on Tupelo towards his home and Duplessis turned right following Giamalvo. William Valdez, the only eyewitness to the accident, testified that Duplessis was traveling approximately 20 to 25 m.p.h. when the right front bumper of the truck struck Octavio. He further testified that there were no obstructions to his view and he clearly saw the Duplessis vehicle strike Octavio.
Octavio was immediately taken to the emergency room at East Jefferson General Hospital by his mother, Gloria Torres and treated by Dr. John Schuhmacher. Octavio remained hospitalized for five days. He sustained a fractured front tooth, closed head injuries, cerebral contusion, infraorbital airfracture at the back of his left eye, sinus fracture, multiple lacerations and abrasions of the face. Octavio was discharged on December 8, 1984 with follow up visits indicating frequent nosebleeds, nightmares, nervousness and arm swelling.
The trial court found Duplessis was negligent and was operating the vehicle within the course and scope of his employment thereby imputing his negligence to David's Plumbing Company and its liability insurer, USF & G.
*1295 The court awarded damages in the amount of $3,032.50 individually to Jose Torres and $20,000.00 for the benefit of the minor child, Octavio Torres.
USF & G appeals the trial court's judgment alleging Duplessis was not negligent, that Duplessis was not within the course and scope of his employment at the time of the accident and the damage award was excessive. We affirm.

LIABILITY OF DAVID'S PLUMBING COMPANY:
The issue to be determined is whether Duplessis, when enroute to Giamalvo's home immediately after work to discuss a pay raise, was acting within the course and scope of his employment, thus imputing his negligence to Giamalvo under the doctrine of respondeat superior as expressed by LSA-C.C. Art. 2320.
The general rule is that an employee, in going to and from work, is not considered as acting within the scope of his employment to such an extent as to render his employer liable to third persons for the employee's negligent acts. Wills v. Correge, 148 So.2d 822 (La.App. 4th Cir.1963), writ refused. Whether an employee is within the course and scope of his employment at the time any given tortious conduct occurs presents a question that is not answerable except by general rules, given the myriad of contexts in which it might arise. Johnson v. Dufrene, 433 So.2d 1109 (La.App. 4th Cir.1983), writ denied. The specific question that must be determined is whether the employee's conduct "was so closely connected in time, place and causation to his employment duties as to be regarded a risk of harm fairly attributable to the employer's business, as compared with conduct motivated by purely personal considerations entirely extraneous to the employer's interest." Daniels v. Conn, 382 So.2d 945 (La.1980); LeBrane v. Lewis, 292 So.2d 216 (La.1974); Johnson v. Dufrene, supra. Among the factors to be considered in determining an employer's responsibility for the tort of an employee are:
"... the time, place and purpose of the act in relation to service of the employer, the relationship between the employee's act and the employer's business ... and the reasonable expectation of the employer that the employee would perform the act." Michaleski v. Western Preferred Casualty Company, 472 So.2d 18 (La.1985) at 21, citing Reed v. House of Decor, Inc., 468 So.2d 1159 (La.1985).
Several undisputed facts are pertinent to our holding that Duplessis was acting within the course and scope of his employment. First, Duplessis claims he informed Giamalvo earlier that he was coming to see him later to discuss "something". Second, Duplessis was not travelling home when the accident occurred but was going directly to Giamalvo's home after punching out at 1:30 p.m. Third, Duplessis was going to see Giamalvo specifically to discuss a pay raise, definitely a work related matter. These factors taken together indicate quite clearly that Duplessis' trip was strictly for business purposes. There is no evidence to indicate that Duplessis was on a social or purely personal trip. Accordingly, under the instant facts, we hold that the trial court's determination in this regard is correct.

NEGLIGENCE OF ROY DUPLESSIS, JR.:
A reviewing court must give great weight to the factual conclusions of the trial judge. Canter v. Koehring, 283 So.2d 716 (La.1973). Reasonable evaluations of credibility and inferences of fact should not be disturbed on appellate review unless clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
The record clearly establishes that Duplessis observed children playing on Tupelo Street on two separate occasions within, at most, a fifteen minute period before the accident occurred. Although the law does not make a driver of a vehicle the insurer of a child's safety, it does impose a high degree of care upon the driver and a duty to anticipate that a child, possessed with limited judgment, might be unable to appreciate impending danger, is likely to be *1296 inattentive, and might suddenly place himself in a position of peril. Baumgartner v. State Farm Mutual Automobile Insurance Company, 356 So.2d 400 (La.1978); Rottman v. Beverly, 183 La. 947, 165 So. 153 (1935); Robertson v. Penn, 472 So.2d 927 (La.App. 1st Cir.1985), writ denied, 476 So.2d 353; Smith v. Trahan, 398 So.2d 572 (La.App. 1st Cir.1980). As to what precautions he took, Duplessis only stated he was traveling 3 to 4 m.p.h. when he struck the Torres child. He did not testify that, after noticing the children, he took any additional precautions to avoid possible injury.
In direct conflict with Duplessis' testimony was that of the only independent eyewitness, William Valdez. Valdez testified Duplessis was travelling 20 to 25 m.p.h. when he struck Octavio and there were no obstructions to Duplessis' view. The trial court chose to believe Valdez, a credibility determination completely within the discretion of the trier of fact. Green v. Louisiana Coca Cola Bottling Co., 477 So.2d 904 (La.App. 4th Cir.1985), writ denied, 478 So.2d 910.

QUANTUM:
Before a court of appeal can disturb an award the record must clearly reflect the trier of fact abused its discretion in making the award. C.C. Art. 1934(3); Reck v. Stevens, 373 So.2d 498 (La.1979); Coco v. Winston Industries, 341 So.2d 332 (La. 1976).
Dr. Schuhmacher's diagnosis of Octavio's condition was:
"Diagnosis of this patient included a closed head injury, cerebral contusion, infraorbital, air fracture at back of the eye, along with multiple abrasions and lacerations of the face.
The CT Scan indicated a fracture of the upper part of the nose and skull and a cerebral contusion. The precise definition of a cerebral contusion is a contusion of the brain, more severe than a concussion. It is a bruising of the actual brain."
Considering the severity of these injuries we find no abuse of discretion in the amount awarded.
For the foregoing reasons the judgment of the trial court is affirmed.
AFFIRMED.