954 So.2d 218 (2007)
Sheila THOMAS, et al., Plaintiff-Appellees
v.
Ryan Gregory DUNCAN, et al., Defendant-Appellants.
No. 41,938-CA.
Court of Appeal of Louisiana, Second Circuit.
March 7, 2007.
*219 Colvin, Weaver & Cerniglia, by James H. Colvin, Jr., Fiona C. York, Pamela N. Breedlove, Shreveport, for Appellants.
Chester Hugh Boyd, Baton Rouge, for Appellees.
Before BROWN, STEWART and MOORE, JJ.
MOORE, J.
After their minor child was struck by a car and injured, Sheila and Kenneth Thomas sued the motorist who hit the child, the owner of the car, his insurer, and the owner of the baseball field to which the child headed on foot. We previously affirmed a summary judgment in favor of defendant Shreveport Dixie Baseball, Inc. ("Dixie"). Thomas v. Duncan, 40,635 (La. *220 App. 2 Cir. 1/25/06), 920 So.2d 969. In the instant appeal, defendants Ryan Duncan, Kent Duncan and State Farm Mutual Automobile Insurance Company ("State Farm") appeal from a judgment finding Ryan Duncan 50% at fault for the accident. We affirm.

Facts
Around 6:30 p.m. on April 28, 2003, eight-year-old Henry Hunter Thomas was a passenger in his mother's vehicle on his way to a baseball game held at Dixie's ballpark on Interport Drive in Shreveport. Interport Drive is a four-lane road with a grassy median dividing the north lanes from the south lanes of travel. The ballpark is on the east side of Interport adjacent to the northbound lanes. Hunter's mother was driving south on Interport. She stopped her vehicle in the inside southbound lane to let Hunter out to go to the ball park for his baseball game. The ballpark's parking lot was not yet open and vehicles were parked on the median. After letting Hunter out, Ms. Thomas drove away to find a parking place and did not witness the ensuing accident.
To get to the ballpark, Hunter had to traverse the grassy median and the northbound lanes of traffic before reaching the ballpark gate. Hunter said that he got out of his mother's vehicle and walked behind it to get to the median. Once there, he walked between two trucks to the curb of the inside northbound lane. There is no crosswalk at the location. Hunter stated that he looked for oncoming traffic, saw none, and then he ran across the northbound lanes of Interport. He reached the outside lane of travel and had about "a step" to go before safely reaching the east side when he was struck by a car driven by Ryan Duncan. Hunter explained that he did not see Ryan's vehicle when he started across the road because of the presence of a small hill in the road. Hunter testified that he saw that Ryan's arm was up near his face but did not see him using a cell phone. Ryan denied using a cell phone. Hunter said that after Ryan's car hit him, it skidded across into the other lane. Hunter's leg was broken in the accident, and he sustained other injuries as well.
Ryan testified that he was driving in the inside lane of Interport, not the outside lane, and was driving the speed limit of 35 miles per hour when he struck Hunter. Ryan said that he didn't apply the brakes until after the accident occurred. The vehicle left skid marks in the vicinity of the crash, but there are no photos to show the location of the skid marks. According to the police report, in the section marked "Skidmark Data," under the "FR" column there is the number 43.10; under the "FL" column, there is the number 35.5. The police report shows the car stopped in the inside lane but does not depict the location of the skid marks. Ryan seemed to agree at trial that his skid marks were about 43-feet long. He said that he saw the marks and that they were entirely in the inside lane. Hunter's father, Kenneth, recalled that the skid marks were "kind of diagonal" and began in the outside lane; likewise, Ms. Thomas said that the skid marks were "curved."
Only Ryan Duncan testified about the presence of people at the scene at the time of the accident. He said he saw "a couple of people on the outside close by the gate where the entrance was, but there wasn't anybody in the road." He also said that there was no one that he could see preparing to cross the road. Likewise, Ryan said there was no traffic on his side in the southbound lanes.
After hearing the testimony of the witnesses, the court noted the length of the skid marks and concluded that Ryan Duncan was going too fast for the conditions *221 "given the congestion and given the fact of all the youngsters out there" and that "he should have been looking for kids running out." The court attributed no fault to Hunter but allocated one-half of the fault to Ryan Duncan and one-half of the fault to Hunter's mother, Sheila Thomas. Ryan Duncan and State Farm now appeal from a judgment in accordance with that finding.
On appeal, the defendants assert five assignments of error. These assignments concern the trial court's allocation of fault to Ryan, the lack of allocation of fault to Hunter, and the alleged lack of evidence for its findings that the area was crowded and that the skid marks tended to show that Ryan was driving too fast.

Discussion
The determination of liability in a negligence case usually requires proof of five separate elements: (1) proof that the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) proof that the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) proof that the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) proof that the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) proof of actual damages (the damages element). Boykin v. Louisiana Transit Co., Inc., 96-1932 (La.3/4/98), 707 So.2d 1225, 1230. (Citations omitted).
It is well-settled that a court of appeal may not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong. Hanna v. Roussel, 35,346 (La.App. 2 Cir. 12/5/01), 803 So.2d 261. An allocation of fault is a factual determination subject to the manifest error rule. Id. When there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review; the issue for the reviewing court is not whether the trier of fact was wrong, but whether the fact-finder's conclusions were reasonable under the evidence. Id.
Generally, duty is the obligation to conform to the standard of conduct of a reasonable man under the circumstances. Hanna, supra. Drivers are required to exercise due care to avoid colliding with pedestrians upon the road. La. R.S. 32:214;[1]Id. Motorists are charged with the duty to see what an ordinarily prudent driver should have seen and avoid striking pedestrians in the road. Likewise, a pedestrian must exercise reasonable care to avoid leaving a curb or other place of safety beside the roadway and walking into the path of a vehicle. La. R.S. 32:212(B).[2]
Although the law does not make a driver of a vehicle the insurer of a child's safety, it does impose a high degree of care upon the driver and a duty to anticipate that a child, possessed with limited judgment, might be unable to appreciate impending danger, is likely to be inattentive, and might suddenly place himself in a *222 position of peril. Bogan on Behalf of Bogan v. O'Connor on Behalf of O'Connor, 97-1205 (La.App. 4 Cir. 12/17/97), 703 So.2d 1382, writ denied, XXXX-XXXX (La.3/20/98), 715 So.2d 1212; Torres v. U.S. Fidelity and Guar. Co., 499 So.2d 1293 (La.App. 4 Cir.1986). The operator of a motor vehicle has the constant duty to watch out for the possible negligent acts of pedestrians and avoid injuring them. A higher standard of care than that required of pedestrians is imposed upon the motorist commensurate with the hazards his conduct inflicts upon the public safety. Id. However, when a driver has employed all reasonable precaution to avoid an accident and a sudden act of a child creates an emergency rendering it impossible for the motorist to avoid striking the child, the accident is considered unavoidable and the motorist is not liable. Moore v. State Farm Mut. Auto. Ins. Co., 499 So.2d 146 (La.App. 2 Cir.1986); Keel v. Thompson, 392 So.2d 713 (La.App. 3 Cir.1980); Gladney v. Cutrer, 440 So.2d 938 (La.App. 2 Cir.1983), writ denied 443 So.2d 596 (La. 1983). Most importantly, each case will turn on its own particular facts. Keel v. Thompson, supra; Fusilier v. City of Houma, 421 So.2d 418 (La.App. 1 Cir. 1982).
By their first and second assignments of error, appellants submit that the trial court erred as a matter of law by holding that Hunter could not be held at fault, and in not assessing any fault against Hunter. It contends that this error requires de novo review of the entire record. Appellants further argue that Hunter was at fault because he appears to be educated and answered all questions, that he knew the dangers of running into traffic, but let his excitement of the moment override his knowledge and ran into the road.
The record discloses that the trial court stated the following:
"I don't think the child should have been placed in that situation to begin with. I don't believe the child is old enough to impute any responsibility to the child. The child is a child, an eight year old is an eight year old, and a ball game is a ball game, and he's heading to it when mom lets him out of the car."
In our view, the appellants misconstrue the trial court's remark when it states that the court found, as a matter of law, that Hunter could not be held at fault categorically. We interpret the court's statement to mean that the child was not responsible for the accident under the circumstances of this case. The court determined that the child was placed in harm's way by his mother, and being an eight-year old child, he was excited about the ball game and crossed the street to get to the ball park. The clear implication is that the court found that, under these circumstances, and given Hunter's age, he could not have been expected to recognize the danger.
The general rule is that a child may be held negligent but is not held to the same standard of care as an adult. The test is whether the particular child, considering his age, background and inherent intelligence, indulged in gross disregard of his own safety in the face of a known risk, understood and perceived the danger. Carter v. City Parish Gov't of East Baton Rouge, 423 So.2d 1080 (La. 1982)[3]; Moore, supra. In Moore, supra, a *223 panel from this court held that a young 8-year-old, Tonya, who was struck by a truck when she suddenly turned her bicycle in the path the truck driven by the defendant, "showed sufficient understanding, perception and intelligence to make her capable of negligence." The court noted that she testified intelligently, had been instructed how to make hand signals, and had done a lot of riding in the area where the accident occurred but had not used the street very often.
In Bogan, supra, a panel from the Fourth Circuit upheld a jury verdict that found no negligence on the part of a 16-year old driver who struck a 9-year-old boy who suddenly ran into the street in the path of the driver's vehicle. The court noted that the 9-year old had limited intellectual faculties, but the defendant driver had taken precautions when he noticed activity along the sidewalk immediately before the accident occurred. The driver was not speeding. There was no cross-walk. There was no traffic light. There were no school buses running at that late afternoon time. Finally, there was no evidence to support a finding that the driver should have or could have seen the boy any sooner than he did.
By contrast, in Dupuy v. Pierce, 285 So.2d 321 (La.App. 3 Cir.1973), a Third Circuit panel held that an eight-year-old female pedestrian of ordinary intelligence was not contributorily negligent in causing her own death, where she was instructed by her mother to get the mail from the mailbox located across the highway that ran in front of their house. The girl made it safely across the highway, but she was struck and killed by an oncoming vehicle as she went back across to return home after getting the mail. The defense introduced evidence to show that the girl had been instructed at school as to the hazards of crossing a street and the proper method in crossing. She was considered a smart child with an IQ of 113. However, witnesses said she never looked in the direction from which the car driven by defendant was traveling. Apparently, when she was almost to the centerline of the highway, she panicked, and tried to return to the mailbox side of the highway. The court concluded that the child did not willingly expose herself to the danger confronting her and was therefore not contributorily negligent. Regarding the defendant's fault, the court noted that although the defendant was driving her vehicle at only slightly more than half the speed limit, the visibility was good and the child was wearing bright clothes. The defendant did not see the child until it was too late. The court held that the driver was negligent in that she was inattentive, did not blow her horn or apply her brakes before the accident.
In the instant case, Hunter testified that it was the first time his mother had ever let him out on the median to go to a game. He said he saw the defendant's car when he was already halfway across the road and he was hit when he had about a step to go before reaching the other side. He also testified that he thought that he did not initially see the car coming because of a small hill. Hunter's testimony conflicted with Ryan Duncan's testimony regarding what lane he was in at the time of the crash.
We cannot say that the trial court erred in finding that Hunter was not at fault in causing the accident. The court was not *224 clearly wrong in finding that Hunter could not be at fault under these circumstances.
The trial court specifically noted that it made credibility determinations in its findings, and although it did not specifically so state, we conclude that the trial court must have accepted Hunter Thomas' testimony about the accident over Ryan Duncan's testimony regarding the accident. In finding that Duncan had a duty to drive slower than the speed limit "given the congestion and given the fact of all the youngsters out there," the court must have believed that Duncan should have been looking out for kids running out into the street.
By their third assignment of error, appellants contend that the trial court erred in finding that there were children present, thereby increasing the driver's duty at the time of the accident, when the evidence established that there were no children or other pedestrians near the road. In their fourth assignment of error, appellants contend that because there were no children or pedestrians in the area, Ryan Duncan could not be at fault when Hunter suddenly ran into the street from behind parked vehicles.
The first issue is whether the trial court's statement regarding "all the youngsters out there" constituted a manifestly wrong finding of fact. Although this record does not support a finding that there were children crossing or standing around the roadway at the time of the accident, we observe that the location of the crash was adjacent to the ballpark, and the street area was congested with parked cars, including vehicles parked on the median. We think it is obvious that the presence of all the vehicles around the Dixie baseball field during baseball season creates an obvious inference that there might be children and adults coming and going as their games begin and end at any time. The presence of the parked vehicles next to the ball park on the median and roadside alone is enough to trigger a response to be cautious. The court's finding that defendant had a duty to drive slower than the speed limit and to be more cautious is based on both the "congestion" and "all the youngsters out there." We therefore conclude that the trial court meant that there were a lot of children in the area in general, namely the ball park area, and not a specific finding that there were children crossing the street or standing on the side of the road preparing to cross the street. Given the fact of the parking congestion along the roadway, there was an increased danger that a child might run out into the road and the defendant should have been cognizant of this danger and reacted by driving more slowly and cautiously. Accordingly, we find no error in concluding that Ryan Duncan was 50% at fault.
Defendants also urge that the trial court should not have placed weight on the length of the skid marks in the absence of expert testimony to show the correlation between that length and Ryan's speed. In this case, Ryan testified that he was driving the speed limit, and the trial court apparently accepted that testimony, so there was not a genuine dispute about Ryan's speed at the time of the crash that necessitated expert testimony to resolve. The trial court simply concluded that Ryan was driving too fast, even at the speed limit, given the congestion and nature of the area through which he was driving.
By its final assignment of error, appellants contend that the trial court erred in not assessing 100% fault against Sheila Thomas. We have previously concluded that the trial court did not err in finding that Hunter was not at fault and Ryan Duncan 50% at fault. We further conclude that the remainder of fault for this accident lies with Sheila Thomas. Just as Ryan Duncan should have taken *225 greater precaution while driving through the parked vehicle congestion along the roadside area next to the baseball park, Sheila should not have placed her eight-year old son in harm's way by dropping him off at the median in such a way that required him to cross the roadway. Accordingly, the trial court did not err in assessing the remaining 50% of fault to her.

Conclusion
After review of the entire record, we cannot say that the trial court's allocation of fault is manifestly erroneous or clearly wrong or that the court committed legal error. Hunter testified that he was not able to see Duncan's car until just before the crash because of a small hill, and that testimony was not contradicted. Given his age and the circumstances, the decision not to allocate fault to the child pedestrian in this case turns upon the trial court's decision to credit the child's testimony as truthful, a decision that this court will not upset. This court is not the finder of fact but must review the cold record; we do not have the benefit of hearing the witnesses. Although this court might weigh the evidence differently if it were the trier of fact, we are mindful of our role as a reviewing court and do not substitute our view of the evidence for that of the trial court when that court's view is reasonable and supported by the evidence. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989).
Therefore, we affirm the judgment of the district court at appellants' costs.
AFFIRMED.
NOTES
[1] La. R.S. 32:214 provides:

Notwithstanding the foregoing provisions of this Part, every driver of a vehicle shall exercise due care to avoid colliding with any pedestrian upon any roadway and shall give warning by sounding the horn when necessary and shall exercise proper precaution upon observing any child or any confused or incapacitated person upon a highway.
[2] La. R.S. 32:212(B) provides:

B. No pedestrian shall suddenly leave a curb or other place of safety and walk or run into the path of a vehicle which is so close that it is impossible for the driver to yield.
[3] A similar version of this test was enunciated by Judge Tate in Cormier v. Sinegal, 180 So.2d 567 (La.App. 3 Cir.1965):

In evaluating whether the child's conduct constitutes contributory negligence, the child is required to exercise only the care expected of his age, intelligence, and experience under the particular circumstances presented to him; in this respect, the obviousness or not of the danger to one of the child's years, experience, and intelligence is taken into consideration.(Citations omitted).