GRAVOIS, J.
Defendants, Sonya Meyer and Liberty Personal Insurance Company, appeal a trial court judgment in favor of plaintiff, David Troxclair, individually and as natural tutor and administrator of the estate of his minor son, Cole Troxclair, in this suit for damages arising from a motor vehicle accident that occurred in front of plaintiff's home. After a bench trial, the court found Mrs. Meyer solely liable for the accident that caused injuries to Cole and damages to plaintiff's mailbox. On appeal, defendants argue that the trial court was manifestly erroneous in finding Mrs. Meyer at fault in causing the accident, or alternatively, in failing to find Cole comparatively at fault in causing the accident. For the following reasons, we affirm the judgment.
FACTS AND PROCEDURAL HISTORY
At around 8:00 a.m. on the morning of February 27, 2015, defendant, Sonya Meyer, was operating her Toyota Sequoia SUV on Lake Arrowhead Drive in the Stonebridge Subdivision in Harvey, Louisiana. Cole Troxclair, a minor child, lived on this street with his mother, father, and older brother. Mrs. Meyer also lived in the same neighborhood and was on her way home from dropping her daughter off at school. Cole, who was in the fifth grade at the time, was outside running in his front yard with his older brother, Drake, who was in the seventh grade. As Mrs. Meyer was proceeding down the street in front of the Troxclair home, her vehicle struck Cole, although the exact location of the accident was disputed at trial (whether it was in the driveway, the street, or the front yard).
In the accident, Cole sustained a mild concussion, a "really" bruised leg, a scraped arm, two lacerations on his chin (one requiring stitches), a "tiny" hairline fracture of the iliac crest of his hip, and a chipped tooth. He spent part of the day in the hospital. He was able to return to normal activities about a month or two after the accident. According to Mrs. Troxclair, he had a full and complete recovery "except for a little bit of puckering on his chin." Plaintiff's mailbox, which was a brick structure located next to the driveway where the front lawn met the curb, was also damaged when it was struck by Mrs. Meyer's vehicle.
*1069 On September 25, 2015, suit was filed against Mrs. Meyer and her automobile insurer, Liberty Personal Insurance Company. A bench trial was held on the matter on May 22, 2017.[1] After taking the matter under advisement, the trial court signed a judgment on May 24, 2017 in favor of plaintiff, finding Mrs. Meyer solely liable for the accident and awarding plaintiff $29,619.99 in damages.[2] Defendants requested written reasons for judgment, which were issued by the court on June 23, 2017. This appeal followed.
At issue in this appeal is the trial court's determination that Mrs. Meyer was solely liable in causing the accident.[3] Defendants argue that the evidence shows that Cole was totally responsible for his own injuries because he "suddenly and without warning" ran into the path of Mrs. Meyer's vehicle, such that Mrs. Meyer did not have time to avoid hitting him. Alternatively, defendants argue that the evidence shows that at the very least, Cole was comparatively at fault in causing the accident, and thus, he should bear some responsibility for his injuries and resulting damages.
LAW AND ANALYSIS
A court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong." Stobart v. State , 617 So.2d 880, 882 (La. 1993). In Stobart , the Supreme Court reiterated the two-part test for the reversal of a factfinder's determinations: 1) the appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and 2) the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous). Id. This test dictates that a reviewing court must do more than simply review the record for some evidence which supports or controverts the trial court's finding. The reviewing court must review the record in its entirety to determine whether the trial court's finding was clearly wrong or manifestly erroneous. Id.
The issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. Id. Even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Id. However, where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable factfinder would not credit the witness's story, the court of appeal may find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. Id. Nonetheless, the reviewing court must always keep in mind that "if the trial court or jury's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that *1070 had it been sitting as the trier of fact, it would have weighed the evidence differently." Id. at 882-83.
The reason for this well-settled principle of review is based not only upon the trial court's better capacity to evaluate live witnesses (as compared with the appellate court's access only to a cold record), but also upon the proper allocation of trial and appellate functions between the respective courts. Id. at 883. Thus, where two permissible views of the evidence exist, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Id.
An allocation of fault is a factual determination subject to the manifest error rule. Thomas v. Duncan , 41,938 (La. App. 2 Cir. 3/7/07), 954 So.2d 218, 221. When there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review; the issue for the reviewing court is not whether the trier of fact was wrong, but whether the factfinder's conclusions were reasonable under the evidence. Id.
At trial, plaintiff offered the live testimony of Summer Troxclair, Cole's mother, as well as of defendant, Mrs. Meyer. Leslie Claiborne, a resident of the neighborhood and witness to the accident who was traveling in her vehicle behind Mrs. Meyer, testified via a video deposition. The deposition testimonies of Deputy Jerry Bonds, the investigating deputy with the Jefferson Parish Sheriff's Office, as well as that of Drake Troxclair, Cole's older brother, were also introduced into evidence.
In its reasons for judgment, the trial court found:
After considering the evidence, stipulations, and the law, this Court determined that Defendants were liable to Plaintiff for the damages complained of in his petition. This Court determined that Sonya Meyer was distracted, did not see the children running in the yard and close to the street, and that she drove too close to the curb causing her vehicle to come into contact with Cole Troxclair and the Troxclair mailbox, and causing injury to the minor child and damage to the mailbox.
A review of the testimony presented at trial shows that the trial court was faced with differing accounts as to how the accident in question happened.
Mrs. Troxclair testified that at the time of the accident, she had just arrived home from her job as a pharmacist with Walgreens and was preparing to take her boys to school, but that Cole was running around in the front yard because he did not want to go to school that day and was being chased by his brother. On the day of the accident, only her car was in the driveway, and there were no obstructions in the driveway or yard that would have concealed a child from a driver in the street. Also, no vehicles were parked in the street.[4]
Mrs. Troxclair testified that Cole was "pretty close" to the street when Mrs. Meyer's vehicle hit him. She said that her street curves slightly to the left in front of her house, but she did not observe Mrs. Meyer veer her vehicle, or make an evasive maneuver, until after impact.
On cross-examination, Mrs. Troxclair viewed a diagram that she had previously filled out, placing Mrs. Meyer's vehicle at least three feet into her front yard. She *1071 noted that Mrs. Meyer hit the mailbox too, which meant that she would have had to have driven up into her yard. To that extent, she said that she would disagree with Ms. Claiborne's assertion that Mrs. Meyer never left the roadway or went into the yard. She stated that she did not discuss how the accident happened with Deputy Bonds.
Mrs. Meyer was called by plaintiff under cross-examination. She acknowledged that her vehicle struck Cole and the mailbox. She denied driving into the Troxclairs' yard. She agreed that the pole of the mailbox was in the yard, but stated that the mailbox itself hung over the curb at the street, though she also admitted that she did not see the mailbox prior to striking it. She also admitted that prior to impact, she had not seen the two boys running in the front yard and there were no obstructions in the yard that would have concealed them from her. She insisted that Cole darted out into the street in front of her, and stated that after she hit him, she jerked the wheel to the right and hit the mailbox.
On direct examination, Mrs. Meyer testified that she was a respiratory therapist at two area hospitals and had lived in the neighborhood for approximately three years prior to the accident. She took this particular route every day in and out of the subdivision and was very familiar with the streets. She testified that at the time of the accident, she was returning home from dropping her daughter off at school when she saw an orange flash (Cole's shirt) in front of her car, hit him "seconds later," jerked the wheel "out of shock," and hit the mailbox, at which point she stopped her vehicle. She testified that her right front headlight hit the mailbox. All of the damage to her vehicle was on the right front side. She denied ever driving up into the grassy part of the yard, contrary to Mrs. Troxclair's testimony.
In her video deposition, Leslie Claiborne testified that she lived in the subdivision and was on her way home on the morning of the accident after dropping her daughter off at school. She did not know plaintiff or defendant, but was familiar with their vehicles as being in the neighborhood. She was driving about a car length behind Mrs. Meyer on Lake Arrowhead Drive when she saw Mrs. Meyer hit what she thought might be a person, seeing something fly above her vehicle, but because the Sequoia was large, her view of what it hit was not clear. Mrs. Meyer stopped and so did Ms. Claiborne. Once she got out of her vehicle, she saw Cole lying on the edge of the driveway, past where the mailbox would have been, as it had been knocked down. Plaintiff's mailbox and driveway were on the right side of the road. She said that the mailbox would have been in the front yard, in the grass, before the driveway. She called 9-1-1, but did not speak to the policeman on the scene. She testified that Mrs. Meyer's car was ahead of her, but "slightly off to the right" side of the road and "closer to the curb than you normally would have been." She did not remember whether Mrs. Meyer's wheels were in the grass and had no recollection of the specific parked position of Mrs. Meyer's vehicle after the accident. Ms. Claiborne did not recall seeing the children running in the driveway or street. She stated that she did not see Mrs. Meyer drive up into the grassy portion of the Troxclairs' front yard.
Ms. Claiborne testified that she could not state where Cole was prior to the impact because she could not see around the Sequoia. After the impact, she got out of her car and saw Cole lying in the driveway. She agreed that there was nothing in the yard, street, or driveway that would *1072 have obstructed Mrs. Meyer's view of the Troxclair yard and of the children running in it.
Drake Troxclair, Cole's older brother, testified in his deposition that Mrs. Meyer's car "went into the yard" for a distance of about four feet and hit Cole with its right front bumper. He said that Cole was in the front yard about ten feet from the driveway, and he landed on the edge of the driveway. Drake himself was in the driveway at the time. He saw the car coming towards them, but did not yell out because he did not think it would come that close to the yard until it did. He saw the car strike Cole, but his memory was "fuzzy" after that. He remembered that Mrs. Meyer struck Cole first and then the mailbox. He marked on a photograph where he thought Cole was in the yard when he was hit. He stated that Cole stayed in the front yard and never ran out into the street before he got hit.
Deputy Jerry Bonds testified in his deposition that he responded to the 9-1-1 call.[5] He acknowledged that he had no independent recollection of the accident. For his deposition, he refreshed his memory of the accident with his report. He arrived on the scene at about 8:25 a.m., according to his report, and did not witness the accident. He stated that he observed the injured boy, who was in the process of being transported to the hospital, the destroyed mailbox, and Mrs. Meyer's vehicle parked in front of the house. He was told that Mrs. Meyer had struck the boy and the mailbox. He stated that Mrs. Meyer told him she was driving down the street when Cole ran out into the street in front of her. She also told him that immediately before the impact, she swerved her car to the right towards the curb and the Troxclair home. He testified that Ms. Meyer did not indicate that she saw Cole at any point before impact.
Deputy Bonds stated that the weather was clear that day and there were no obstructions in the street that would have prevented drivers from seeing the Troxclair yard as they drove down the street. He observed a vehicle parked in the driveway (the Troxclair car) that he was told was parked there the whole time. He said that Mrs. Troxclair told him she witnessed everything from inside of her car, and that Cole had not run into the street, but stayed in the driveway. He spoke with Cole at the hospital, but he had already undergone some treatment and was "out of it a little bit." He described an "island" of landscaping in the front yard of the Trosclair home site, but stated that it was far enough away from the road that it would not have obstructed a driver's view of people in the front yard.
According to Deputy Bonds, the only person who put Cole in the street at the point of impact was Mrs. Meyer. His report, however, stated that Mrs. Troxclair told him that Cole was struck in the roadway. He agreed that nothing in his investigation led him to believe that Mrs. Meyer drove up into the grassy part of the yard. He did not recall if he saw tire tracks in the yard. It was his understanding that Mrs. Meyer swerved to the right in trying to avoid hitting Cole, which led her impact with the mailbox. He did remember that Mrs. Meyer drove a Sequoia, which was large, that it was parked at the foot of the driveway, and that it had sustained damage to the right side. His written report, which contained a diagram of the accident scene including the resting place of Mrs. *1073 Meyer's vehicle, was attached to his deposition.
Thus, the trial court was faced on the one hand with the testimonies of Summer Troxclair and Drake Troxclair who placed Cole in his own front yard by the mailbox and close to the end of the driveway when Mrs. Meyer's vehicle struck him, meaning that Mrs. Meyer had driven off the roadway, or at least onto the curb at impact. On the other hand, the trial court heard the testimony of Mrs. Meyer, who testified that suddenly and without warning, Cole had run into the street, where she unavoidably hit him. All accounts of the accident placed Cole in the driveway following impact. Further, it is undisputed that Mrs. Meyer struck the Troxclairs' mailbox, which was a brick structure located at the curb, near the end of the driveway, where the yard met the street.
In brief, defendants argue that Cole violated the provisions of La. R.S. 32:212(B), which provides: "No pedestrian shall suddenly leave a curb or other place of safety and walk or run into the path of a vehicle which is so close that it is impossible for the driver to yield." It is questionable, however, as to whether this statute actually applies to the facts of this case, as by its own title, it pertains to the right-of-way of pedestrians in "crosswalks," not to a person in a yard. In any event, the evidence presented at trial was clearly disputed as to whether Cole actually left "a curb or other place of safety and [walked or ran] into the path of [Mrs. Meyer's] vehicle which is so close that it is impossible for [Mrs. Meyer] to yield."
Defendants also cite the case of Jeansonne v. Corbett , 496 So.2d 1346 (La. App. 3rd Cir. 1986), writ denied , 499 So.2d 942 (La. 1987), which held that if a motorist is proceeding at a lawful and reasonable speed and is obeying the rules of the road as to proper lookout, he will not be held liable when a child suddenly darts into his path from a concealed position. The present case is clearly distinguishable on the facts from Jeansonne , however. In Jeansonne , a boy on a bicycle entered a rural roadway from a lane, where he was struck by a car traveling on the rural roadway.[6] A large group of bushes, shrubbery, and a plank fence obscured the motorist's view of the entrance of the lane into the roadway. The motorist was found to be not liable for the accident. In the present case, however, while there is no evidence in the record that Mrs. Meyer was speeding, the evidence is clear that there were no obstructions in the yard or the roadway that concealed the boys in the front yard or that would have prevented Mrs. Meyer from seeing what apparently she should have seen.
La. R.S. 32:214 provides: "Notwithstanding the foregoing provisions of this Part, every driver of a vehicle shall exercise due care to avoid colliding with any pedestrian upon any roadway and shall give warning by sounding the horn when necessary and shall exercise proper precaution upon observing any child or any confused or incapacitated person upon a highway." The law is thus clear that motorists who see a child on or near a roadway owe a high duty of care and a duty to anticipate that the child, possessed of limited judgment, might be unable to appreciate impending danger, is likely to be inattentive and might suddenly place himself in a position of peril. See Jeansonne v. Corbett , 496 So.2d at 1348, citing Buckley v. Exxon Corporation , 390 So.2d 512 (La. 1980). In the present case, however, Mrs. Meyer testified that she did *1074 not see Cole until right before her vehicle struck him, even though Cole was clad in a neon orange shirt. Further, the evidence in this case was undisputed that there were no obstructions in the yard or the roadway that would have prevented Mrs. Meyer from seeing him.
After considering the record in its entirely and the applicable law, we find no manifest error in the trial court's conclusion that Mrs. Meyer was solely liable in causing the subject accident. We find that the record reasonably factually supports the trial judge's findings in its reasons for judgment that Mrs. Meyer was apparently distracted, and because of this, did not see the children running in the Troxclairs' front yard and close to the street, and that Mrs. Meyer drove too close to the curb causing her vehicle to come into contact with Cole and the Troxclair mailbox, causing injuries to Cole and damages to the mailbox.
Having found no manifest error in the trial court's factual conclusions and allocation of fault to Ms. Meyer, we further find no manifest error in the trial court's tacit finding that Cole was not comparatively at fault in causing this accident. Because the trial court's findings of fact are reasonably factually supported by the record, we affirm the judgment.
CONCLUSION
For the foregoing reasons, the judgment in favor of plaintiff is affirmed. Costs of the appeal are assessed to defendants.
AFFIRMED

Prior to trial, plaintiff stipulated that his damages did not exceed $50,000.00, exclusive of interest and costs.

The court awarded plaintiff $10,000.00 in general damages for Cole's injuries, plus stipulated special damages in the amount of $19,079.50 for medical expenses, and $540.49 for damages to the mailbox.

Defendants do not appeal the amount of general damages awarded to plaintiff. Coverage by her liability insurer was stipulated, as was the amount of special damages claimed by plaintiff.

Mrs. Troxclair testified that parking vehicles in the street was a violation of Stonebridge Subdivision policy.

Deputy Bonds stated that he had been in law enforcement for 27 years, and in the traffic division for 16 years.

The case appears to show that the defendant driver was driving under the posted speed limit and was otherwise in compliance with traffic laws.