BROXLIN T. COLEMAN

VERSUS

ACE PROPERTY & CASUALTY INS. CO. /
ESIS & BROCK SERVICES, LLC

NO. 19-CA-305

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE OFFICE OF WORKERS' COMPENSATION,
DISTRICT 7
STATE OF LOUISIANA
NO. 18-2251,
HONORABLE SHANNON BRUNO BISHOP, JUDGE PRESIDING

November 27, 2019

**JOHN J. MOLAISON, JR.**
**JUDGE**

Panel composed of Judges Stephen J. Windhorst,
Hans J. Liljeberg, and John J. Molaison, Jr.

**AFFIRMED**
    **JJM**
    **SJW**
    **HJL**

COUNSEL FOR PLAINTIFF/APPELLANT,
BROXLIN T. COLEMAN
    Nathan L. Schrantz

COUNSEL FOR DEFENDANT/APPELLEE,
BROCK SERVICES, LLC AND INDEMNITY INSURANCE COMPANY OF
NORTH AMERICA
    Charles M. Jarrell

**MOLAISON, J.**

In this workers' compensation case, the claimant, Broxlin T. Coleman, appeals a judgment in favor of defendants, Brock Services, LLC, its insurer, Ace Property & Casualty Ins.[1] and ESIS, a third party administrator for the insurer (collectively "defendants"), which sustained defendants' exception of prescription. For the following reasons, we affirm the judgment of the Office of Worker's Compensation (OWC).

**PROCEDURAL HISTORY**

Claimant, Broxlin Coleman, was injured in the course and scope of his employment with Brock Services, LLC on July 5, 2011. The parties settled the workers' compensation indemnity claim on January 8, 2015. In that settlement, claimant received $112,500.00 in satisfaction of his claim for future indemnity benefits, and reserved his right to "unpaid past and future medical and medically-related benefits under the Louisiana Workers' Compensation Act."

On April 5, 2018, Mr. Coleman filed a Disputed Claim for Compensation in the Office of Workers' Compensation District 7 Office, claiming payment for his medical treatment was not authorized, and that medical benefits were terminated in the fall of 2016. Defendants filed an exception of prescription asserting that more than three years had elapsed between the date of the last payment of medical benefits on December 17, 2014, and the date of filing of the claim on April, 5, 2018. After a hearing on the matter, the OWC judge sustained the exception, finding that the claim had prescribed, and that prescription was not interrupted by

---

[1] Although the disputed claim for compensation names Ace Property & Casualty Ins. as a defendant, it appears the correct party name is Indemnity Insurance Company of North America. However, neither party has made the correct name of the insurer an issue on appeal. Both names are used interchangeably in the record.

19-CA-305                                              1

acknowledgment, nor renounced by the defendants. Further, the court found that the doctrine of *contra non valentem* is not applicable. Mr. Coleman filed a timely appeal.

**FACTS**

According to his testimony, Mr. Coleman was employed by Brock Services LLC as a supervisor in 2011. He injured his neck, knee and back in a fall at work. In January of 2015, he reached a settlement for the indemnity claim, but left the medical claim open because he continued to seek medical treatment as a result of the injury.

Initially after the injury, Mr. Coleman sought treatment with Dr. Yost and Dr. Okoloise at Hope Pain Management. He paid for the treatment with the understanding that he would be reimbursed. However, since neither doctor took Workers' Compensation insurance, ESIS referred Mr. Coleman to Dr. Eldridge who did accept the insurance. At some point, Mr. Coleman was also treated by other doctors, including Dr. Davis and Dr. Wolfson. Mr. Coleman ultimately selected Dr. Eldridge as his pain management physician.

Since the settlement of his indemnity claim in 2015, Mr. Coleman has only treated with Dr. Okoloise, seeing him about once a month. His health insurance carrier partially pays for the continuing treatments, and Mr. Coleman pays the remainder. He was given a prescription card by ESIS, however, the prescription card was rejected when Mr. Coleman attempted to use it sometime in 2015 or 2016.

Mr. Coleman explained that after the settlement was completed in 2015, he was no longer represented by counsel. He received no information about how to assert his right to the continued medical coverage established in the settlement agreement, and has had to navigate this matter on his own. Mr. Coleman testified that he tried to return to Dr. Davis and Dr. Wolfson, but was told by ESIS that the

case was closed and the cost of the treatment was not covered. Mr. Coleman was able to obtain a new prescription card in 2018, but the card was rejected when he attempted to use it.

Janell Forges, an attorney in the law office that represented Mr. Coleman in his initial workers' compensation claim, testified at the hearing. She stated that the representation of their firm ended with the 2015 settlement, and the firm did not reestablish an attorney/client relationship with Mr. Coleman after that. However, when Mr. Coleman reached out to them for help in November of 2015 getting medical treatment with other doctors who previously treated him, Ms. Forges called Valencia Johnson, an adjuster with ESIS. Ms. Johnson would not return phone calls or respond to emails.

Ms. Forges explained that when Mr. Coleman first called, she knew that he was treating with Dr. Okoloise, however, she was not aware that workers' compensation was not paying for that treatment. It wasn't until sometime in 2016, when Mr. Coleman called again, that Ms. Forges discovered Dr. Okoloise's bills were not being paid.

Ms. Forges again tried to contact Ms. Johnson or her supervisor at ESIS to no avail. Subsequently, Ms. Forges discovered that there was a merger between ESIS and CHUBB[2]. In December of 2017, after researching CHUBB on the internet, Ms. Forges was able to speak with a customer service representative who put her in touch with William Hubbard, a supervisor. Ms. Forges explained that she was trying to get medical authorization for Mr. Coleman's medical treatment in accordance with the January 2015 agreement. Mr. Hubbard acknowledged there were some problems with Ms. Johnson's handling of claims and agreed to re-open the claim. Mr. Hubbard also assured Ms. Forges that he would issue a new

---

[2] The nature of CHUBB and the relationship agreement between ESIS and CHUBB is not clear from the testimony or the record.

prescription card, and requested that Ms. Forges forward to him any medical bills or records that verified Mr. Coleman's continued treatment. Ms. Forges provided all of the bills and medical records requested. She denied giving any legal opinion on the prescription issue.

At the hearing, claimant's counsel introduced email correspondence between Ms. Forges and Mr. Hubbard. These emails show that on February 12, 2018, Ms. Forges sent Mr. Coleman's medical records as requested. That same day, Mr. Hubbard replied stating;

> I apologize for the delay in this email. I have reopened the claim and I am requesting a new RX card be sent. I'm going to try and get a temporary one but since I just reopened the claim it will probably not register in the system until tomorrow. I have set a reminder tomorrow to review.

Ms. Forges forwarded this email to Mr. Nathan Schrantz, Mr. Coleman's current attorney. Shortly afterward a new prescription card was issued. Unfortunately, the card was rejected upon attempted use. When Ms. Forges contacted ESIS, she was told by an adjuster that no more medical payments would be made because the claim had prescribed. No other explanation was given.

The defendants offered the deposition of William Hubbard. In that deposition, Mr. Hubbard confirmed that he is an employee of ESIS, the third party administrator for the workers' compensation insurer. Mr. Hubbard was supervising Mr. Coleman's claim. He verified that, because of changes in staffing, there was no adjuster on this file at various points in time. Mr. Hubbard stated that during these times, a supervisor performed some of the functions necessary in handling the claim. Mr. Hubbard also acknowledged there were problems with Valencia Johnson, the adjuster assigned to Mr. Coleman's claim in 2015. There were instances when Ms. Johnson would not return phone calls from claimants and attorneys. Ms. Johnson is no longer employed with ESIS, although Mr. Hubbard gave no details regarding the time or circumstances of her departure. Mr. Hubbard

verified that no notification was sent to Mr. Coleman regarding the change in adjusters, nor was Mr. Coleman provided with new contact information.

In connection with his deposition, Mr. Hubbard produced documents to show that the last medical payment made on Mr. Coleman's behalf was on December 17, 2014 to Advanced Pain Institute. Mr. Hubbard stated that ESIS did not pay any of the costs of prescriptive medication directly or through reimbursement since that time. Ultimately, Mr. Hubbard concluded that the claim prescribed on December 17, 2017, three years from December 17, 2014, the date of the last medical payment.

When he received the communication from Ms. Forges indicating that Mr. Hubbard had been receiving continuing medical treatment, he reviewed the claim. Mr. Hubbard acknowledged receiving medical bills from Ms. Forges in February of 2018. Mr. Hubbard stated that Ms. Forges told him the claim was not prescribed because of the ongoing treatment. Mr. Hubbard testified that he issued the new prescription card based on Ms. Forges' assertion that, legally the prescriptive period starts at the end of treatment, not payment. Mr. Hubbard stated that, had he known the correct law, and that issuance of a new prescription card might interrupt prescription, he would not have issued the card.

Mr. Hubbard verified Mr. Coleman's testimony that after the settlement in 2015, his company sent no information on the procedure for submission and payment of any claim for medical treatment, although a claim packet would have been mailed after the initial injury in 2011. When the claim was reopened in 2018, it was assigned to a new adjuster. That adjuster denied medication requests made through the newly issued prescription card because the medications were ordered by Hope Medical and Dr. Okoloise, providers that were not in the system.

**ASSIGNMENTS OF ERROR**

Claimant asserts the workers' compensation court erred in sustaining the defendants' exception of prescription. Specifically, he assigns three errors:

1. The trial court erred as a matter of law by failing to find prescription was renounced.

2. The trial court erred as a matter of law by failing to find the doctrine of *contra non valentem* applied.

3. The trial court erred as a matter of law by failing to find the medical claim was acknowledged and prescription interrupted.

**LAW AND ANALYSIS**

*Standard of Review*

The first issue raised by the claimant is the correct standard of review on appeal. Claimant argues this Court should review the matter *de novo* because the defendants' exception involves the application of legal principals of renunciation, *contra non valentem* and acknowledgment as related to legal prescription. We disagree.

It is only when the trial court considers no properly admitted evidence prior to its ruling that the *de novo* review standard is mandated. Prescription issues are raised by a peremptory exception. La. C.C.P. art. 927. This Court explained the correct standard of review of a peremptory exception in *In re Med. Review Panel of Gerard Lindquist,* 18-444 (La. App. 5 Cir. 5/23/19), 274 So.3d 750.

> At a hearing on a peremptory exception pleaded prior to trial, evidence may be introduced to support or controvert the exception. In the absence of evidence, a peremptory exception must be decided upon the facts alleged in the petition with all of the allegations accepted as true. Furthermore, when no evidence is introduced at the hearing on the exception, the reviewing court simply determines whether the trial court's finding was legally correct. In a case involving no dispute regarding material facts, but only the determination of a legal issue, a reviewing court must apply the *de novo* standard of review, under which the trial court's legal conclusions are not entitled to deference. (citations omitted) *In re Med. Review Panel of Gerard Lindquist*, 274 So.3d at 754.

In the matter before us, there was evidence presented and there are disputed facts, therefore a *de novo* review is not appropriate in the consideration of the exception of prescription in this instance.

In reviewing a peremptory exception of prescription, the standard of review requires an appellate court to determine whether the trial court's finding of fact was manifestly erroneous. *Taranto v. Louisiana Citizens Property Ins. Corp.,* 10-0105 (La. 3/15/11), 62 So.3d 721, 726. This Court cannot set aside a trial court's finding of fact in the absence of "manifest error," or unless it is clearly wrong. *Stobart v. State*, 617 So.2d 880, 882 (La. 1993). Although the factfinder is afforded deference and the factual findings will not be set aside absent manifest error or unless clearly wrong, appellate courts have a duty to review the facts. *State, Dept. of Transp. & Development v. Schwegmann Westside Expressway, Inc.*, 95-261 (La. 3/1/96), 669 So.2d 1172, 1177. There is a two-part test for reversal of a factfinder's determinations; (1) the appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and (2) the appellate court must further determine that the record establishes that the finding is clearly wrong. *Stobart*, supra. We review the facts, not to resolve whether the trial court was right or wrong, but whether the conclusion was a reasonable one. *Troxclair v. Liberty Pers. Ins. Co.*, 17-520 (La. App. 5 Cir. 2/21/18), 239 So.3d 1067, 1069.

One fact that is not in dispute is that the last payment for medical benefits was on December 17, 2014. Claimant filed this claim on April 4, 2018. La. R.S. 23:1209(C) provides that;

> All claims for medical benefits payable pursuant to R.S. 23:1203 shall be forever barred unless within one year after the accident or death the parties have agreed upon the payments to be made under this Chapter, or unless within one year after the accident a formal claim has been filed with the office as provided in this Chapter. **Where such payments have been made in any case, this limitation shall not take effect until the expiration of three years**

**from the time of making the last payment of medical benefits**. (emphasis added)

As a general rule, the exceptor bears the burden of proof at trial that the matter has prescribed. *In re Med. Review Panel of Gerard Lindquist*, supra, 274 So.3d at 754. However, if prescription is evident on the face of the pleadings, the burden shifts to the plaintiff to show that the action has not prescribed. *Id.* As an inchoate right, prescription, may be renounced, interrupted, or suspended; and *contra non valentem* applies as an exception to the statutory prescription period where in fact and for good cause a plaintiff is unable to exercise his cause of action when it accrues. *Reeder v. North,* 97-0239 (La. 10/21/97), 701 So.2d 1291, 1298.

Here, the petition is prescribed on its face. Pursuant to La. R.S. 23:1209(C), the claim prescribed on December 17, 2017, three years from the last payment for medical benefits. Claimant presents three arguments to defeat the exception of prescription. He argues that: (1) the claim was acknowledged by the insurer as late as November of 2015 when it made payments for a Social Security verification and a Medicare Set-Aside Cost Allocation (MSA); (2) prescription was renounced by the transmission of the new prescription medication card in February of 2018; and (3) the doctrine of *contra non valentem* is applicable.

### *Interruption by acknowledgment*

"Prescription is interrupted when one acknowledges the right of the person against whom he had commenced to prescribe." La. C.C. art. 3464. The recognition of the obligation or the creditor's right halts the progress of prescription before it has run its course. *Gary v. Camden Fire Ins. Co.*, 96-0055 (La. 7/2/96), 676 So.2d 553, 556. An acknowledgement involves an admission of liability, either through explicit recognition of a debt owed, or through actions of the debtor that constitute a tacit acknowledgement. *Id.* A tacit acknowledgment

arises from a debtor's acts of reparation or indemnity, unconditional offers or payments, or actions which lead the creditor to believe that the debtor will not contest liability. *Estate of Ehrhardt v. Jefferson Par. Fire Dep't*, 12-319 (La. App. 5 Cir. 1/30/13), 108 So.3d 1223, 1229, citing *Gary v. Camden Fire Ins. Co*., supra.

Claimant argues that prescription was interrupted by the payment for the MSA in November of 2015, and by the claim notes showing an ongoing review of the claim including statements that if Mr. Coleman goes back to treatment the claim will be reopened. Documentation in the record shows that ESIS paid PMSI Settlement Solutions $95.00 on August 11, 2015 and $2,000.00 on November 13, 2015. Mr. Hubbard established through his testimony that the payments were for a Social Security verification and an MSA, respectively. Mr. Hubbard explained that these were necessary before any settlement could be considered. Mr. Hubbard further testified that once the MSA was received, it was determined that a settlement should not be pursued. The MSA was not provided to the claimant.

Claimant asserts that this is an acknowledgment of the debt sufficient to interrupt prescription. We do not find claimant's argument convincing. An acknowledgment sufficient to interrupt prescription requires more than settlement negotiations. *Mullen v. Sears, Roebuck, & Co.,* 887 F.2d 615, 618 (5th Cir. 1989). If the negotiations do not result in an agreement that the defendant is liable for the plaintiff's injuries, there is no acknowledgment sufficient to interrupt prescription. *Id.*

According to Mr. Hubbard's testimony, an MSA is traditionally done to explore possible settlements. In *Estate of Ehrhardt v. Jefferson Par. Fire Dep't*, supra, this Court found that an MSA that was not transmitted to claimant's attorney was insufficient to constitute an acknowledgement. The *Ehrhardt* Court

distinguished a Second Circuit case[3] in which the court ruled that an MSA, transmitted to claimant's attorney in settlement negotiations, was an acknowledgement. We find that no acknowledgment sufficient to interrupt prescription occurred in this case. While ESIS paid for an MSA and a Social Security report, neither were transmitted to claimant. Further, there is no indication that any settlement negotiations between the parties were discussed.

### *Renunciation*

Once prescription has run, it may be renounced. La. C.C. art. 3449. "Renunciation of prescription" is the technical term designating the abandonment of rights derived from an accrual of prescription. *Id.* at comment (c). That is, renunciation of prescription destroys the effect of prescription that has already run. *Neese v. Papa John's Pizza*, 10-15 (La. App. 5 Cir. 6/29/10), 44 So.3d 321, 328. Renunciation of prescription may be express or tacit. La. C.C. art. 3450. Effective renunciation of accrued prescription must be unequivocal, and only occurs when the intent to renounce is clear, direct, absolute and manifested by words or actions of the party in whose favor prescription has run. *Queen v. W. & W. Clarklift, Inc.*, 537 So.2d 1214, 1216 (La. 4 Cir. App. 1989).

In this case, the issuance of a new prescription card in 2018 is the basis for claimant's assertion that prescription was renounced. Claimant argues that act is a new promise to pay sufficient to constitute a renunciation. We do not find that act is a "clear, direct, absolute" renunciation of prescription. Mr. Hubbard testified that he issued the card only because he was given incorrect legal information on the onset of the prescriptive period by Ms. Forges. He specifically stated that he would not have issued the card had he known the claim legally prescribed three years from the date of the last payment, not the last treatment. Further, he testified

---

[3] See *Reed v. Mid–States Wood Preservers, Inc.*, 43,799 (La.App. 2 Cir. 12/3/08), 999 So.2d 189, *writ denied,* 09–0009 (La .2/20/09), 1 So.3d 500.

that he had no intention of interrupting or renouncing prescription. Additionally, when the adjustor reviewed the matter and discovered the card was issued after the prescriptive period had run, the card was rejected before Mr. Coleman was able to use it. For these reasons, we find no manifest error in the OWC judge's finding that prescription was not renounced.

### *Contra non valentem*

Claimant invokes the doctrine of *contra non valentem* to challenge the exception of prescription. The doctrine of *contra non valentem* is a jurisprudential doctrine which means that prescription does not run against a person who could not bring his suit. *Carter v. Haygood,* 04–646 (La.1/19/05), 892 So.2d 1261, 1268. The doctrine of c*ontra non valentem* was created as an exception to the general rules of prescription. *Richards v. Choice Hotels Int'l, Inc.*, 13-973 (La. App. 5 Cir. 5/21/14), 142 So.3d 249, 252. The doctrine is to be strictly construed and only applicable in exceptional circumstances. *Id.*

There are four situations in which the doctrine of *contra non valentem* can be applied to suspend the running of prescription: (1) where there was some legal cause which prevented courts or their officers from taking cognizance of or acting on plaintiff's action; (2) where there was some condition coupled with contract or connected with proceedings which prevented creditor from suing or acting; (3) where defendant himself has done some act effectually to prevent plaintiff from availing himself of his cause of action; and (4) where some cause of action is not known or reasonably knowable by plaintiff, even though his ignorance is not induced by defendant. *Wells v. Zadeck*, 11-1232 (La. 3/30/12), 89 So.3d 1145, 1150.

In the matter before us, claimant relies on the third and fourth situations, arguing that ESIS did not provide him with any information about how to process his medical claim or any new contact information for adjustors. Claimant argues

he should not be penalized where the insurer knew of its ongoing obligation to pay medical bills. He points out that he was not represented by counsel after the 2015 settlement and had difficulty contacting the adjuster.

In *Giorlando v. Lowe's Home Centers, LLC,* 16-262 (La. App. 5 Cir. 12/14/16), 209 So.3d 293, a factually similar case in which the parties had reached a settlement on indemnity and the claim for medical payments remained open, the claimant argued *contra non valentem* applied. In *Giorlando*, the claimant argued that after the parties had reached the settlement on indemnity, there was an ongoing discussion between his attorney and counsel for the employer regarding the settlement of his future medical claims, which was dependent on the results of the MSA. The claimant argued that the employer used the pending MSA to lure him into inaction. The *Giorlando* claimant filed the disputed claim within one year of notification that the MSA had been received and that the employer opted not to settle the claim, but beyond three years from the last medical payment. The OWC judge found that, while an email exchange discussed an MSA and a possible settlement, it did not resolve the issue since there was no evidence that the agreement to settle ever took place. This Court affirmed that ruling upon a finding that the OWC judge was not clearly wrong. *Id.*

In the matter before us, it is significant to note that claimant does not argue there was some action by the insurer which prevented him from submitting a claim or lulled him into believing his claims would be paid when submitted. Rather he argues the insurer did not tell him how to submit a claim or help with the claims process. Mr. Coleman's testimony established that he chose Dr. Eldridge as his pain management physician and that he attempted to schedule appointments with other doctors, but was told they could not get approval for treatment. It is clear that Mr. Coleman knew Dr. Okoloise did not take workers' compensation insurance, but preferred to treat with him. Under this factual scenario, we cannot find error in

the OWC judge's determination that the doctrine of *contra non valentem* is inapplicable.

We find no merit in claimant's assignments of error. Accordingly, the judgment of the Office of Workers' Compensation is affirmed.

19-CA-305

**AFFIRMED**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

MARY E. LEGNON
CHIEF DEPUTY CLERK

SUSAN BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **NOVEMBER 27, 2019** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 19-CA-305

**E-NOTIFIED**
OFFICE OF WORKERS' COMPENSATION, DISTRICT 7 (CLERK)
HON. SHANNON BRUNO BISHOP (DISTRICT JUDGE)
NATHAN L. SCHRANTZ (APPELLANT)          CHARLES M. JARRELL (APPELLEE)

**MAILED**
NO ATTORNEYS WERE MAILED